## 36470. TIMBERLAKE v. THE STATE.

HILL, Justice.

This appeal is from the denial of defendant's amended motion for a new trial, including allegedly newly discovered evidence, following his conviction and sentence to life imprisonment for the murder of Herbert Bishop Edwards.

The victim was shot three times at his Sandy Springs Texaco

Station at approximately 4 p.m. on September 20, 1979. The forensic pathologist testified that death was due to two gunshot wounds to the head (the third shot passed through the victim's body).

Walter Shonhor was standing in the victim's station about ten feet from the assailant at the time of the shooting. Shonhor testified that a man whose face was clearly visible walked into the office of the station and suddenly fired three shots. He identified the defendant from a photographic array. At trial he identified the defendant as the gunman.

Emerson Soules was a customer in the station when the shooting occurred. Soules testified that he observed the assailant, whom he identified in court as the defendant, walk into the office of the gas station with a pistol in his hand, aimed at the victim. Without saying anything, the assailant fired one shot. The bullet struck the victim who fell against Soules as a second shot was fired. As the victim fell to the floor, the assailant warned Soules not to move. The assailant then put the gun to the victim's head and shot a third time. The murderer then left the station. Soules followed him, hoping to read the license plate on the getaway car, and saw him enter a car which did not have a Georgia license plate. He identified the defendant from the third photographic array he was shown.

Vicki Killingsworth was driving past the Texaco Station when she heard shots. She observed a man fleeing the scene by the same route described by Soules and saw him enter a car driven by another male. She identified the defendant in court as the man she saw leave the station and enter the car.[1]

The gun identified as the murder weapon, a .38 caliber Charter Arms pistol, was found in the possession of one George Edward Partin, an escapee from the Tennessee State Prison. Partin and another inmate had escaped on September 18, 1979, two days before the murder, using a truck later found in Atlanta or Marietta. Two weeks later, on October 3, 1979, Partin engaged officers of the

---

[1] Defense witness Donald Clark testified that he had known the defendant all his life, that he was employed at a service station across the street from the Texaco Station, that he observed the shooting incident and that the defendant was not the man who committed the murder, but that the gunman resembled George Partin, a man he knew from prison. Another witness employed at this same station testified that he heard the shots and, as he started running toward the Texaco Station, he saw the gunman leave the station followed by another man, that he was unable to identify the defendant, and that Donald Clark was working on a car when the assailant was lost from sight. In rebuttal the prosecuting attorney testified, over objection, that Clark had said earlier he was unable to identify the gunman and unable to say whether it was Partin or the defendant.

Chattanooga Police Department in a gun battle and was killed. The gun Partin was using was kept in the custody of the Chattanooga Police Department until late November or early December when it was learned that it may have been the one used in the murder of Herbert Edwards. Ballistics evidence showed this to be true.

In undertaking to explain Partin's possession of the murder weapon, the state sought to prove a connection between Partin and the defendant through Harry B. Daniels, a man known to the defendant and his son. Testimony showed that Partin and Daniels were seen together the week before Partin's death and that a letter and automobile registration bearing Daniels' name were found in Partin's hotel room after his death. The names, addresses and telephone numbers of Daniels and the defendant were each found twice in Partin's notebook which he left when he escaped from the penitentiary. Partin's daughter testified that the writing contained in the book was that of her father.

The state introduced business records of Southern Bell Telephone Company which indicated that between September 1 and October 9, 1979, eleven long distance calls were placed from the pub the defendant managed in Atlanta to the number of Kathy Shipley in Tennessee. Ms. Shipley testified that she knew the defendant by having met him at his place of business and by talking to him on the telephone. She stated further that the defendant used to call for the purpose of speaking to John McGee, an alias Harry Daniels used. The defendant objected to the evidence tending to show any connection he had with Partin through Daniels.

An employee of the defendant testified that the defendant left his pub at about 2 p.m., going to get a pistol permit, and returned about 4 p.m. The defendant testified that he left the pub about 2 p.m., went to the Probate Court to renew his pistol license, filled out an application form, walked to the police station to be fingerprinted about 2:45 p.m., returned to the Probate Court and then returned to the pub about 4 p.m. He denied having shot the deceased, denied being near the scene of the shooting, and denied knowing Partin.

Employees at the Probate Court had records of the defendant applying for a pistol permit on the date in question but could not say whether it was done in the morning or afternoon. An employee at the fingerprint office testified that the defendant was fingerprinted between 9 and 11 a.m. on the morning of the day in question. A person fingerprinted that same day placed defendant at the office at about 10 a.m.

The jury found the defendant guilty of murder.

1. The defendant contends that the trial court erred in denying his amended motion for a new trial based on newly discovered

evidence. At the hearing on his motion, the defendant attempted to introduce the testimony of two witnesses to whom George Partin allegedly confessed. Defendant asserts that the witnesses were unknown to him at the time of trial and that their testimony constitutes newly discovered evidence. The state objected to the testimony of both witnesses as being hearsay and inadmissible and the trial court so held.

The standard for granting a new trial on the basis of newly discovered evidence is well established. "It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness." *Emmett v. State,* 232 Ga. 110, 117 (205 SE2d 231) (1974); *Bell v. State,* 227 Ga. 800, 805 (183 SE2d 357) (1971); *Burge v. State,* 133 Ga. 431, 432 (66 SE 243) (1909); *Berry v. State,* 10 Ga. 511, 527 (1851); see Code Ann. § 70-204. All six requirements must be complied with to secure a new trial. *Offutt v. State,* 238 Ga. 454, 455 (233 SE2d 191) (1977); *Corn v. State,* 142 Ga. App. 798, 799 (237 SE2d 203) (1977). Implicit in these six requirements is that the newly discovered evidence must be admissible as evidence. The evidence offered here is not admissible, as will be seen below.

Preliminarily, however, we note that although the defendant has stated that the evidence has come to his attention since the trial, he has made no showing that it was not owing to want of due diligence that he did not acquire it sooner. Failure to show one requirement is sufficient to deny a motion for a new trial. *Offutt v. State,* supra. The fact that the murder weapon was found on George Partin was known to the defendant before trial, as shown by his pre-trial motions. The defendant states in his brief that "There was no showing of lack of due diligence on the part of the [defendant] to locate said evidence. Diligence on the part of the [defendant] may be inferred from the continuing efforts to uncover any possible leads even after the trial of the case." It is not incumbent upon the state to show lack of diligence, and diligence before trial will not be inferred from diligence after conviction. The rule is that "It is *incumbent on a party who asks for a new trial* on the ground of newly discovered evidence *to satisfy the court . . .*" as to each of the six requirements. *Bell v. State,* supra, 227 Ga. at 805 (emphases supplied); *Burge v. State,* supra, 133 Ga. at 432; *Berry v. State,* supra, 10 Ga. at 527. There was no factual showing that

this evidence could not have been discovered by the exercise of ordinary diligence.[2] The mere assertion that the evidence could not have been discovered by ordinary diligence is insufficient. *Mills v. State,* 193 Ga. 139, 147 (17 SE2d 719) (1941); *Johnson v. State,* 196 Ga. 806, 807 (27 SE2d 749) (1943); *Taylor v. State,* 132 Ga. 235, 237 (63 SE 1116) (1908). This record is void of any reason why the defendant did not acquire this information before trial.

More important, the testimony of Partin's two alleged confidants is not admissible evidence; it is inadmissible hearsay. It is the long-standing rule in this state that declarations to third persons against the declarant's penal interest, to the effect that the declarant, and not the accused, was the actual perpetrator of the offense, are not admissible in favor of the accused at his trial, *Lyon v. State,* 22 Ga. 399 (1) (1857); *Johnson v. State,* 188 Ga. 662 (1) (4 SE2d 813) (1939); *Bryant v. State,* 197 Ga. 641 (9) (30 SE2d 259) (1944), or to procure a new trial on the basis of newly discovered evidence. *Herrin v. State,* 230 Ga. 476, 478 (197 SE2d 734) (1973). In *Lyon v. State,* supra, the court reasoned that if such admissions were allowed as evidence upon the trial of the accused, a person could subvert the ends of justice by admitting the crime to others and then absenting himself.

The defendant relies on two cases which he argues undercut this reasoning: Chambers v. Mississippi, 410 U. S. 284 (93 SC 1038, 35 LE2d 297) (1972), and Green v. Georgia, 442 U. S. 95 (99 SC 2150, 2151, 60 LE2d 738) (1979). In Chambers v. Mississippi, the eyewitness testimony was about equal on the question of whether Chambers or McDonald fired the fatal shot. Here the eyewitness testimony that the defendant shot the deceased clearly outweighs the evidence to the contrary. There McDonald had given and signed a written confession which he later repudiated. There Chambers sought to cross examine McDonald as a hostile witness regarding the repudiated confession and a claimed alibi but was prevented from doing so by the Mississippi witness "voucher" rule. Chambers' effort to have three witnesses testify that McDonald had confessed to them was prevented by the hearsay rule. In Chambers, the United States Supreme Court noted that most states limit the declarations against interest exception to the hearsay rule to declarations against pecuniary interest, thereby excluding declarations against penal interest. The Supreme Court held that the exclusion of the testimony

---

[2]Although the possible involvement of Partin was known to the defendant before trial and although the defendant employed a private investigator who testified at trial, the investigator did not testify at the hearing on the amended motion for new trial.

of the three witnesses on grounds of hearsay *coupled with* the denial of cross examination of McDonald constituted a denial of due process. The court expressly limited its holding to the facts and circumstances of that case. Chambers v. Mississippi, 410 U. S. at 303. Clearly, the Supreme Court did not hold unconstitutional the rule which excludes declarations against penal interest. Our review shows that this case falls within the rule and does not rise to the level of Chambers v. Mississippi.

Green v. Georgia, supra, held that a hearsay declaration against the penal interest of a co-conspirator is admissible during the *punishment phase* of a death penalty case where that declaration is "highly relevant to a critical issue . . . and substantial reasons existed to assume its reliability." 442 U. S. at 97. There the declaration by a co-conspirator was not offered to exonerate Green of the crime itself but was material to the issue of punishment.[3] More significantly, the state had relied upon the statement at the trial of the co-conspirator. Unlike Green v. Georgia, this is not a death penalty case and the state has not relied on the alleged confessions by Partin to convict him.

The trial court did not err in denying the motion for new trial based on this newly discovered "evidence."

2. The defendant asserts that the trial court erred in not granting his motion for a new trial on the basis of a newly discovered, recent photograph of George Partin. Additionally, the defendant contends that the failure of the district attorney to bring this recent photograph of George Partin to the attention of the defendant or the trial court warranted the grant of a new trial as a violation of his Brady motion.[4] The photograph was received by the state during the course of the trial.

Defendant's Brady motion did not specify photographs of other suspects (it sought investigative notes, memoranda and reports concerning other suspects, which the trial court agreed should be produced under the circumstances of this case as to any bona fide suspects). Hence the Brady standard (". . . suppression by the

---

[3]In Lockett v. Ohio, 438 U. S. 586, 604 (98 SC 2954, 2965, 57 LE2d 973) (1978), the Court stated that ". . . the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kinds of capital case, not be precluded from considering *as a mitigating factor,* . . . any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (Emphasis in original.)

[4]Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). It is not necessary to make a motion for new trial based on newly discovered evidence in order to assert a Brady violation on a timely appeal. However, compare the Brady standard with the third requirement of a motion for new trial based on newly discovered evidence. *Emmett v. State,* supra.

prosecution of evidence favorable to an accused *upon request* violates due process where the evidence is material either to guilt or to punishment. . .," 373 U. S. at 87 (emphasis supplied) is inapplicable. There being no request for photos of other suspects, the standard of United States v. Agurs, 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1976), is applicable here. The issue in Agurs was whether the prosecutor has a constitutional duty to *voluntarily* produce exculpatory evidence to the defense *without* request. The U. S. Supreme Court answered the question in the affirmative, using a standard different from that used in Brady v. Maryland. The Agurs standard is: ". . . if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed," 427 U. S. at 112.

The defendant had access to a photo of George Partin at the time of trial (a photo less than two years old), and used it to examine witness Donald Clark (see fn. 1). The defendant did not seek to examine the state's eyewitnesses by use of the photo of Partin available to the defense at trial (two of those witnesses had viewed a photographic array including the less than two-year-old Partin photo and had not identified Partin). Moreover, in support of the motion for new trial the defendant did not tender post-trial evidence that any of the state's three eyewitnesses would identify Partin from the newly discovered recent photo.[5] We conclude that the recent Partin photo does not create a reasonable doubt otherwise not existing and that no Agurs error has been committed. Having so concluded, it follows that the recent Partin photo was not "so material that it would probably produce a different verdict," *Emmett v. State,* supra, and hence it was not error to overrule the motion for new trial on the ground of newly discovered photographic evidence.

3. The defendant enumerates as error the failure to exclude testimonial and documentary evidence which tended to show a connection between the defendant and George Partin who was shot 13 days after the murder with the murder weapon in his hand. The state attempted to show that Harry Daniels, alias John McGee, was the connecting link between the defendant and Partin.

The state's evidence showed that Harry Daniels was a friend of the defendant and his son, that during September and October, 1979, the defendant frequently had called from his Atlanta pub to speak to John McGee (Daniels) in Tennessee, and that Partin was seen with Daniels the week before his death. The state also introduced a

---

[5] If it has any probative value, a state's witness testified at the hearing on the motion for new trial that the recent Partin photo had been shown to the state's three eyewitnesses prior to the hearing without his being identified by them.

notebook, identified by Partin's daughter as being in his handwriting, containing in two different places the names, addresses and telephone numbers of the defendant and Daniels. The defendant entered a continuing objection on the basis that the evidence was irrelevant and immaterial. The trial court admitted all the evidence subject to the state's connecting it. At no time during the trial did the defendant renew his objections.

"Where testimony is provisionally or conditionally admitted, counsel must renew his objection to it later and invoke a final ruling if he still desires its exclusion, and on his failing to do so no valid assignment of error can be made upon the court's ruling." *Vun Cannon v. State,* 208 Ga. 608, 611 (68 SE2d 586) (1952); *Bailey v. Perrin,* 128 Ga. App. 476, 477 (196 SE2d 899) (1973). The defendant's failure to renew his objection is understandable in light of the fact that, in our view, the state showed the relevancy of the circumstantial evidence linking the defendant to Partin through Daniels and through Partin's notebook.

Additionally, the trial court did not err in permitting the prosecutor to argue in closing that Partin and the defendant had a "mutual buddy," namely Daniels.

4. After the jury was empaneled and sent to the jury room, the defendant was successful in his motion in limine to exclude evidence tending to show that on September 11, 1979, nine days before the murder, the defendant's son and the victim had removed $45,000 from a car belonging to the son's business partner and later burned the car, that the son had been indicted for arson, that the victim had said he would testify against the defendant's son, and that the defendant's motive for the murder was to silence the victim. There was no showing by the state that the defendant knew these facts regarding the victim.

The excluded testimony was reported in the Atlanta Journal and Constitution, copies of which were found in the jury room the following day. The defendant complains that his motion for mistrial was overruled. The jurors had been instructed at the outset not to discuss the case or permit it to be discussed in their presence. The defendant did not request that the jurors be instructed not to read or listen to news accounts concerning the case. Moreover, the defendant did not show that the newspapers were taken to the jury room by any juror and did not undertake to question any juror as to whether he or she had read the articles (defense counsel in arguing the motion for mistrial merely stated that "We know what they were reading in that room").[6]

---

[6]The presence in the jury room on the morning of January 22, 1979, of the January

On appeal the defendant complains that the trial judge made no attempt to question the jurors to determine whether they had any knowledge regarding the newspaper articles. After hearing and overruling the motion for mistrial, the court again admonished the jury not to discuss the case and said: "In addition thereto, I charge you you shall not consider any reports or comments by reporters in the news media, whether it be television, radio or newspapers... The Court therefore instructs you that you must be guided solely by the evidence adduced here in open court in your hearing and presence, and further instructs you that it would be illegal for you to give any consideration to any information other than that which comes to you through competent testimony delivered under oath in your hearing and presence." (The defendant then renewed his motion for mistrial, but again did not request that the jurors be examined.) Before the jury dispersed for the evening, the trial court repeated the instruction to the jury not to read newspapers and to be guided solely by the evidence adduced in court.

The general rule is that the burden is on the one who asserts error (normally the defendant in a criminal case) to show it affirmatively by the record. *Waldrop v. State,* 221 Ga. 319 (5) (144 SE2d 372) (1965); *Lucear v. State,* 221 Ga. 572 (3) (146 SE2d 316) (1965). Regarding juries, where the jury is sequestered and the defendant shows that a juror was allowed to disperse without the defendant's consent, a presumption arises that the defendant has been injured and the burden is on the state to show that no third party contact related to the case on trial. *Whitlock v. State,* 230 Ga. 700, 701-702 (198 SE2d 865) (1973). Where the jury is not under the rule of sequestration, it is not sufficient for the defendant merely to show that the jury was allowed to disperse. Where the jury is not under the rule of sequestration, the defendant must show not only a contact between a juror and a third person but that such contact related to the case. *Brown v. State,* 246 Ga. 251 (2) (1980).

*Mason v. State,* 239 Ga. 538 (238 SE2d 79) (1977), involved a problem similar to the case before us. There the jurors were not sequestered; the jurors were allowed to disperse overnight with instructions not to discuss the case; a newspaper article reported that the defendant had a prior murder conviction; the defendant had not requested that the jury be instructed not to read news articles concerning the case; and the defendant knew that the article had

---

21 Atlanta Journal, an evening paper, is unexplained. The jury was excused for the day on January 21 at 3:10 p.m.

been published but did not seek, during the trial, to have the jurors questioned as to whether they had read the article. On extraordinary motion for new trial it was shown that at least one juror subscribed to the newspaper in question but had not read the article, that another juror bought the newspaper in question and read the article but stated that he was not influenced by it, and the jurors had not discussed the article. This court affirmed the denial of Mason's extraordinary motion for new trial for three reasons: (1) since the jury dispersal was lawful, the burden was not on the state to show that the defendant was not injured; (2) the defendant had not requested that the jury be instructed not to read news accounts of the trial; and (3) the defendant failed to ask for corrective action before the verdict was returned. The first two bases of *Mason* are applicable to the case before us. As for the third basis, here the defendant moved for mistrial but did not request that the jurors be questioned as to whether they had read the articles.

Applying the general rule stated above, applying *Brown v. State,* supra, and *Mason v. State,* supra, we find no reversible error here. After conviction, a defendant cannot complain that the trial judge failed to take action not mandated by law where the defendant did not timely request that the judge take such action. This is a specific application of the more general rule that a party cannot during the trial ignore what he thinks is an injustice, take his chance on a favorable verdict, and complain later. *Joyner v. State,* 208 Ga. 435 (2) (67 SE2d 221) (1951). The trial court did not err in denying defendant's motion for new trial based on the ground that the jurors read prejudicial newspaper articles.

5. The defendant urges that it was error for the trial court to deny his motion for a mistrial on the basis that two witnesses refused to state their residence addresses.

Sue Partin Parsons and Emerson Soules testified for the state. Out of the jury's presence, the state indicated when Ms. Parsons was called as a witness that she was embarrassed by her father's conduct and that she had agreed to testify on the condition of nondisclosure of her address. Likewise, Soules gave no address when called as a witness and on cross examination declined to divulge his address. Out of the presence of the jury, he indicated that his reason was a concern for family security. The defendant urged that he had the right to ask the witnesses their addresses under Davis v. Alaska, 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1973), and Smith v. Illinois, 390 U. S. 129 (88 SC 748, 19 LE2d 956) (1967). The trial judge found the witnesses' reasons for nondisclosure sufficient and permitted both witnesses to testify. Ms. Parsons identified her father's notebook as being in his handwriting. Mr. Soules testified that he witnessed the murder and

identified the defendant as the gunman.

In Alford v. United States, 282 U. S. 687, 691 (51 SC 218, 75 LE 624) (1931), the defendant in a mail fraud case was denied the right to cross examine a government witness (whom the defendant stated was in the custody of federal authorities) as to his address. The Court found a violation of the right of cross examination, saying in part: "Its permissible purposes, among others, are that the witness may be identified with his community so that independent testimony may be sought and offered of his reputation for veracity in his own neighborhood. . ."

In Smith v. Illinois, 390 U. S. 129, 131 (88 SC 748, 19 LE2d 956) (1967), the defendant in a drug sale case asked a state's witness who had testified that he made the "buy" whether he had given his real name. The witness admitted that he had not but then was allowed not to disclose his true name and his address. The Court reversed the conviction saying: "The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." Quoting from Alford, supra, the Court reaffirmed that the extent of cross examination is subject to the sound discretion of the trial judge, that the trial court is not under obligation to protect a witness from being discredited short of an attempted invasion of the witness' right against self incrimination, but that there is a duty to protect the witness from cross examination designed merely to "harass, annoy or humiliate" the witness. In a concurring opinion, 390 U. S. at 133, Mr. Justice White stated that he would place inquiries which tend to endanger the personal safety of the witness in the category of "harass, annoy or humiliate." Mr. Justice White pointed out that ". . . the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling."

In the case before us, the state made a statement of why the two witnesses should be excused from disclosing their addresses. The defendant insisted on his rights under Smith v. Illinois and Davis v. Alaska,[7] supra, which is to say that the defendant, without an expressed reason, insisted on his right to cross examine the witnesses as to their addresses. The defendant's right to cross examine these two witnesses was otherwise unabridged.

---

[7]Davis v. Alaska, supra, actually involved the defendant's right to cross examine a witness as to his juvenile delinquency record and probationary status.

In United States v. Alston, 460 F2d 48 (5th Cir. 1972), cert. denied 409 U. S. 871, it was found that the trial judge did not abuse his discretion in allowing an undercover narcotics agent not to disclose his home address. The court reasoned that the safety of the witness or his family justified the trial court's action, saying *"Alford* and *Smith* do not erect a per se requirement that a witness' home address be divulged upon demand." (460 F2d at 51.) See also United States v. Contreras, 602 F2d 1237 (5th Cir. 1979), cert. denied 444 U. S. 971.

We find no abuse of the trial court's discretion under the circumstances of this case. The trial judge knew that the state contended but could not show (see division 4) that the motive for this murder was to eliminate a witness to an earlier crime.

6. The defendant contends that the trial court erred in overruling his objections to the state's cross examination of defense witness Donald Clark (see fn. 1) as to a prior conviction without laying a proper foundation for impeachment which warranted the grant of a mistrial.

The defense called Clark, an alleged eyewitness to the incident. When asked on direct examination whether the state had shown him state's exhibit 10, a photograph of George Partin, Clark answered "Never." On cross examination, the state asked Clark whether he remembered being shown the photograph the previous week. When Clark answered "No," the state attempted to refresh his recollection: "Do you remember saying that it looked like a guy you knew in the Tennessee State Prison in CRC in Nashville. Do you remember that question?" After Clark answered "Yes," the defendant moved for a mistrial on the basis that the state had attacked the witness' character but the trial court overruled the motion. Clark then admitted having been shown a picture of Partin the previous week and saying he had seen Partin at the Tennessee penitentiary where he (Clark) had been an inmate.

It is of course true that, for purposes of impeachment, the prior conviction of an adverse witness cannot be shown by cross examination of the witness; the question itself can be prejudicial even though a negative answer be truthful; hence the best evidence rule is invoked so that to impeach a witness by a prior conviction the conviction must be proved by the record of conviction itself, not by cross examination. See *Howard v. State,* 144 Ga. 169 (2) (86 SE 540) (1915); *Fincher v. Frost,* 225 Ga. 408 (2) (169 SE2d 309) (1969); 29 EGL, Witnesses, § 38 (1980). However, a review of this transcript shows that the state sought to impeach Clark by proof of a prior inconsistent statement which the witness then admitted he had made. The state was required to call to the witness' attention the circumstances attending the prior inconsistent statement. Code §

38-1803 provides: "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him, the time, place, person, and circumstances attending the former statement shall be called to his mind with as much certainty as possible..." Under the circumstances of this case, the state was justified in calling to the witness' attention the details to his prior inconsistent statement.

We do not want to be understood as permitting prior convictions to become a proper subject of cross examination where a prior inconsistent statement is also involved. Had Clark denied making the prior inconsistent statement and had the state been unable to introduce the record of prior conviction, the issue before us could be entirely different. In view of his admission of the prior inconsistent statement including his admission of being an inmate of the Tennessee penitentiary, we find that the state's failure to prove the prior conviction by the record thereof was harmless error.

7. The defendant asserts that the trial court erroneously permitted the prosecuting attorney to testify as a rebuttal witness for the state which warranted the grant of a mistrial. The purpose of the prosecutor's testimony was to impeach the testimony of defense witness Clark. Clark had testified not only that he had never seen the state's photograph of George Partin, but that the defendant was not the murderer (see fn. 1), and also that the district attorney never had asked him about the possible involvement of the defendant in the case.

Over the defendant's objections, the assistant district attorney prosecuting the case called himself as a witness and was examined by another assistant. The prosecutor testified that upon his inquiry prior to trial, Clark had said that he could not answer with any certainty whether the gunman was George Partin or the defendant.

The practice of trial attorneys testifying is not approved by the courts except where made necessary by the circumstances of the case. 97 CJS, Witnesses, § 113 (1957). Directory Rule 5-102 provides: "When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client." Code Ann. Tit. 9 Appen., § 5-102, 241 Ga. 692-693 (1978). See also EC 5-9, EC 5-10 (241 Ga. 687). One purpose of this rule is to avoid a trial attorney having to argue his own credibility vis-a-vis the lack of credibility of conflicting testimony. This rule is clearly applicable when a lawyer is preparing for trial, including the preparation of anticipated rebuttal and impeaching

testimony. Here however there is no evidence to suggest that the prosecutor was on notice before trial that Clark would give testimony which Clark himself later admitted was at least in part false.

It has been held that permitting a prosecuting attorney to testify as a rebuttal witness is within the discretion of the trial judge. Butler v. State, 229 Ind. 241 (97 NE2d 492) (1951); see generally 97 CJS, Witnesses, § 113 (1957); Annot. 54 ALR3d 100 (1973). The prosecutor in the instant case testified in rebuttal only for impeachment purposes as to what a defense witness had said to the prosecutor. In view of the facts and circumstances, we do not find that the trial judge erred in allowing the prosecutor to testify.

*Judgment affirmed. All the Justices concur.*

SUBMITTED JULY 11, 1980 — DECIDED SEPTEMBER 23, 1980 —
REHEARING DENIED OCTOBER 7, 1980.

*Frank E. Coggin, Leslie P. George,* for appellant.

*Lewis R. Slaton, District Attorney, Wallace Speed, H. Allen Moye, Assistant District Attorneys, Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.