## S91A1618. JEWELL v. THE STATE.
(413 SE2d 201)

CLARKE, Chief Justice.

Gene Autry Jewell was convicted of malice murder in the shooting death of Brian Keith Allen.* The shooting took place in a housing project in the early hours of the morning. Several people probably witnessed the event. The state produced only one eyewitness, Willie Tarver. Tarver was a convicted felon who lied to the police about his name and address when he was first questioned about the shooting. However, his account of the shooting remained consistent. The state produced two other witnesses who corroborated some of the circumstances and parts of Tarver's story. According to the state, the shooting occurred after the appellant and the victim bumped into each other and began to fight. Although witnesses had seen Jewell with a gun that could have inflicted the type of injury incurred, no gun or bullet was found.

1. Jewell first challenges the sufficiency of the evidence. He argues that the unreliable and impeached testimony of Willie Tarver is

---

* The crime occurred September 25, 1990. Appellant was indicted on December 7, 1990. He was convicted of murder on March 14, 1991 and sentenced to life imprisonment. Appellant filed a motion to correct and supplement the record and motion for new trial on May 23, 1991. Appellant filed an extraordinary motion for new trial on June 19, 1991. The trial court denied the motions for new trial on July 3, 1991. Notice of appeal was filed on July 26, 1991. The case was docketed in this court on September 3, 1991. The case was submitted for decision on October 18, 1991.

insufficient as a matter of law to support a verdict of guilty. We note that the facts regarding Tarver's felony conviction and his attempt to conceal his identity from the police were fully explored during cross-examination. Further, no part of Tarver's statement relating to the murder was impeached. Rather, the testimony of two other prosecution witnesses and the testimony of defense witness Marvin Jackson substantially corroborated Tarver's testimony. We conclude that the jury was entitled to believe the eyewitness, Tarver, and that there was sufficient corroborating evidence to support the conviction. Therefore, the evidence produced at trial, when viewed in a light most favorable to the verdict, would authorize a rational trier of fact to find the defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Next, Jewell challenges the denial of his extraordinary motion for new trial based on newly discovered evidence. The newly discovered evidence was the testimony of a cellmate of Tarver's. The cellmate testified that Tarver told him that he did not see the shooting.

In denying the motion for new trial, the trial judge wrote that he found the testimony of the cellmate to be "absolutely incredible." The cellmate was a convicted felon and a personal friend of Jewell's. He also had a romantic relationship with Jewell's niece. The cellmate also lost his temper on the witness stand. The trial court concluded that the cellmate's conduct and demeanor destroyed his credibility and rendered his testimony "so untrustworthy as to be unbelievable" and of "no value." Given these findings by the court, the testimony is not " 'so material that it would probably produce a different verdict.' " *Timberlake v. State*, 246 Ga. 488, 494 (271 SE2d 792) (1980). The trial judge acted within his discretion in denying the motion.

3. Jewell next argues that he was denied his constitutional rights to a fair trial and equal protection of the law because the jury panel was not representative of the community. The panel of 48 jurors from which his venire was selected contained only 13 percent black, while the county population was 27 percent black.

Jewell does not allege that blacks were systematically excluded from the panel. Nor does he contend that the jury pool was unrepresentative. Rather, he contends that the random method of choosing the panel from the larger pool produced an unrepresentative panel in this instance.[2] In *Meders v. State*, 260 Ga. 49 (389 SE2d 320) (1990),

---

[2] The Court Clerk testified that there were 250 potential jurors available to serve on the morning of Jewell's trial. The group of potential jurors contained the identical percentage of blacks as the percentage of blacks residing in the county. The potential jurors were assigned randomly to panels. Since 27 percent of the jurors in the group were black, the first 48 jurors could have been all black, or all white, or any combination thereof.

we examined a jury selection process which used a computer to produce racially balanced jury panels. We concluded that nothing in the law prevented the use of such a system. We noted, however, that the most logical and desirable way to impanel an impartial and representative jury is to select randomly from a complete list of eligible jurors. Id. at 54. Random selection safeguards the selection process from manipulation and ensures the jury's independence. Id. Appellant has not demonstrated any flaw in the selection process that was used in his case. He has not carried his burden of showing purposeful discrimination.

4. Finally, Jewell argues that the trial court erred in failing to grant defendant a new trial based on statements in the prosecutor's closing argument. We have reviewed the supplemented record and conclude that the prosecutor's argument was not an example of prejudicial misconduct that would entitle the defendant to a new trial. See *Hammond v. State*, 260 Ga. 591 (398 SE2d 168) (1990).

*Judgment affirmed. Clarke, C. J., Weltner, P. J., Bell, Hunt, Benham and Fletcher, JJ., concur.*

DECIDED FEBRUARY 13, 1992.

*R. Stephen Roberts*, for appellant.
*Robert E. Wilson, District Attorney, Barbara B. Conroy, J. Thomas Morgan III, Assistant District Attorneys, Michael J. Bowers, Attorney General, Peggy R. Katz, Staff Attorney*, for appellee.