304 Ga. 827
FINAL COPY

S18A1438. JACKSON v. THE STATE.

PETERSON, Justice.

Zjuantavious Marquis Jackson appeals his convictions for malice murder
and other charges related to the shooting death of Detavious Milner at an April
2015 house party in Floyd County.[1] He argues that his trial counsel was
constitutionally ineffective when he argued against bifurcating a charge that
Appellant possessed a firearm as a convicted felon. Appellant also argues that

[1] A Floyd County grand jury on December 2, 2016 indicted Appellant for malice murder, felony murder, armed robbery, burglary, five counts of aggravated assault, four counts of aggravated battery, two counts of possession of a firearm during the commission of a crime, participation in criminal street gang activity, and possession of a firearm by a convicted felon. At a March 2017 trial, Appellant was convicted of all counts except the gang count, on which the trial court directed a verdict of acquittal. The trial court sentenced Appellant to life in prison for malice murder, 20 years consecutive for armed robbery, 20 years concurrent for each of three aggravated assault counts, 20 years concurrent for burglary, 20 years concurrent for aggravated battery, five years consecutive to the armed robbery sentence for one count of possession of a firearm during the commission of a crime, and five years consecutive to the armed robbery sentence for the felon in possession of a firearm count; all other counts merged or were vacated by operation of law. Appellant on April 13, 2017 filed a motion for new trial, amended by appellate counsel on April 9, 2018 and May 2, 2018. Following two hearings, the trial court denied the motion in a May 16, 2018 order. Appellant filed a timely notice of appeal, and the case was docketed to this Court's August 2018 term and submitted for decision on the briefs.

his post-trial discovery of material evidence requires that he be granted a new trial. Appellant has not overcome the presumption that trial counsel's decision to withdraw Appellant's request for bifurcation was part of an objectively reasonable trial strategy, and Appellant has not satisfied the standard for obtaining a new trial based on newly discovered evidence. We affirm.

The evidence in the light most favorable to the verdict shows that Appellant, Joseph Jackson, and Javarick McCain met on the evening of April 7, 2015, and Appellant told the others that Quatevious Johnson owed him money. Appellant gave Joseph Jackson a gun and said they were going to go get his money. McCain dropped off Appellant and Joseph Jackson near Johnson's house. Appellant and Joseph Jackson went into the house and approached a crowd gathered in a bedroom. Pointing the gun at the room, Joseph Jackson demanded money. When no one complied, Appellant told Joseph Jackson to shoot. Joseph Jackson didn't shoot, and so Appellant took the gun and started shooting, fatally wounding Milner. Three other victims, including Johnson, were shot but survived. Appellant chased Johnson, convinced him to give up money stashed in his sock, and tried to shoot him again, but the gun did not fire. McCain then picked up Appellant and Joseph Jackson and drove off.

2

Although Joseph Jackson (also indicted for murder) testified that Appellant fired the gun, other prosecution witnesses implicated Joseph Jackson as the shooter. McCain (also indicted) testified that Joseph Jackson acknowledged shooting someone. Johnson identified Joseph Jackson as the shooter, thought he recognized the voice of one of the robbers as Appellant's, and picked Appellant out of a photo array. Two other witnesses who survived being shot did not positively identify the shooter at trial but indicated in their testimony that the person who had the gun initially was the same one who fired it.

Tremaine Smith, an inmate incarcerated with Appellant, testified that Appellant admitted he went to Johnson's house the night of the shooting but claimed Joseph Jackson was the shooter; Smith acknowledged having previously told police that Appellant admitted to being the shooter. The jury also heard evidence that Appellant offered money to people in exchange for implicating Joseph Jackson.[2]

[2] The jury heard recordings of two telephone calls, one from Appellant to a friend and the other from another inmate to Johnson. In the call by Appellant, Appellant told the friend to "check back in on that investment one more time." The recording of the call placed by another inmate to Johnson is particularly difficult to follow, but an investigator testified that the inmate told Johnson that Appellant was offering $1,000 for someone "to write a

The defense presented the testimony of Calvin Adams, who claimed that he saw Joseph Jackson (carrying a gun) and McCain, but not Appellant, walking up the street by Johnson's house on the night of the shooting.

1. Although Appellant does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the trial evidence was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant argues that he was denied the assistance of constitutionally effective counsel when his lawyer argued against bifurcation of the felon in possession of a firearm charge. We disagree.

Appellant was indicted for malice murder, felony murder (predicated on armed robbery, aggravated assault, aggravated battery, and burglary), armed robbery, burglary, five counts of aggravated assault, four counts of aggravated battery, two counts of possession of a firearm during the commission of a crime, participation in criminal street gang activity, and possession of a firearm by a

statement on" Joseph Jackson.

4

convicted felon. Appellant filed a pre-trial motion to bifurcate the trial such that the felon in possession count would not be tried until after the jury returned a verdict on the "homicide phase"; he also asked the trial court to accept a stipulation of his status as a convicted felon and preclude the State from referring to his past convictions or the felon in possession charge during the first phase of trial. At a pre-trial hearing, however, Appellant withdrew the request to bifurcate, although he continued to insist that he be allowed to stipulate to his status as a felon. Both the trial court and the State indicated a preference for a bifurcated trial, but the trial court ultimately agreed to try all counts together. The jury was told that the parties stipulated that Appellant previously had been convicted of a felony.

Asked at a hearing on Appellant's motion for new trial about the withdrawal of Appellant's request for bifurcation, trial counsel acknowledged that he did not want the jury to hear about the prior felony and that the Court would have bifurcated the trial had he insisted on it. But trial counsel testified that he had concluded that bifurcation was not required and that trying all counts together was the best strategy. Trial counsel indicated that he viewed the State's case as flawed, recalling that two surviving victims identified the shooter as

5

Joseph Jackson, who was the only person who named Appellant as the shooter. "I thought if we were going to win it, we were going to win it on — on the first time," trial counsel testified. "Beyond that, we were talking about having to win two murder trials."

To prevail on his ineffectiveness claim, Appellant "must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." Scott v. State, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citing Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). Where a convicted defendant fails to meet his burden of establishing one prong of the Strickland test, we need not review the other, as a failure to meet either of the prongs is fatal to an ineffectiveness claim. See Lawrence v. State, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010). A party seeking to prove deficient performance "must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms." Muckle v. State, 302 Ga. 675, 680 (2) (808 SE2d 713) (2017) (citation and punctuation omitted). "There is a strong

6

presumption that counsel's conduct falls within the range of sound trial strategy and reasonable professional judgment." Newkirk v. State, 290 Ga. 581, 582 (2) (722 SE2d 760) (2012). "We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003) (citation and punctuation omitted).

Pretermitting whether bifurcation were even available, see Jones v. State, 265 Ga. 138, 139-141 (2) (454 SE2d 482) (1995), we cannot say that Appellant has overcome the strong presumption that trial counsel's decision to withdraw the request for bifurcation was within the range of sound trial strategy and reasonable professional judgment. We reach this conclusion in the light of trial counsel's stated reasons for trying all counts together — that he assessed the State's evidence as weak, and he did not want to give the prosecution multiple opportunities to persuade the jury to convict Appellant of something. See Harris v. State, 234 Ga. App. 126, 129 (3) (505 SE2d 49) (1998) (no ineffectiveness in failing to move for bifurcation of felon in possession count where strategy was to seek acquittal on aggravated assault count; "[t]rial counsel's decision not to move for a bifurcated trial was not the result of inadequate preparation but the

7

result of his choice of trial tactics" based on conversations with client).

3. Appellant also argues that the trial court erred in denying him a new trial based on his claim of newly discovered evidence. Again, we disagree.

Appellant claims that he is entitled to a new trial due to the discovery of a new witness, Brandon McGlotha. McGlotha testified at a hearing on the motion for new trial that on the night of the shooting, Joseph Jackson and McCain approached him in front of Johnson's house, asking for a cigarette. He testified that he then saw Joseph Jackson and McCain enter the house, heard gunshots about five minutes later, then saw two men wearing the same clothes that Joseph Jackson and McCain had been wearing "running after" Johnson. McGlotha testified that he did not see Appellant at Johnson's house that night. Appellant testified at the hearing that, although he had known McGlotha for more than a decade, he did not realize McGlotha had been at the scene of the shooting until the two were placed in the same jail dorm subsequent to trial. Trial counsel testified at a hearing on the motion for new trial that he was not familiar with Brandon McGlotha.

We review a trial court's ruling on a motion for new trial based on newly discovered evidence for abuse of discretion. See Brinson v. State, 288 Ga. 435,

8

437 (3) (704 SE2d 756) (2011). For a new trial to be granted on the basis of newly discovered evidence, the party asking for a new trial must show that: (1) the evidence has come to his knowledge since the trial; (2) it was not owing to the want of due diligence that he did not acquire it sooner; (3) the evidence is so material that it probably would produce a different verdict; (4) the evidence is not merely cumulative; (5) the affidavit of the witness himself has been procured or its absence accounted for; and (6) impeaching the credibility of a witness will not be the only effect of the evidence. Timberlake v. State, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). All six requirements must be met in order to secure a new trial. Id.

In denying Appellant's motion for new trial, the trial court found that at least two Timberlake factors were not met. In particular, the trial court found that the evidence was "essentially" cumulative of Adams's testimony and that the due diligence factor had not been met, either. On the latter point, the trial court found: "[T]he evidence could have been presented at the trial with due diligence. If Brandon McGlotha was actually there, questioning of the numerous others who were also there should have revealed his name in time to call him at the original trial."

9

Without expressing any opinion as to whether McGlotha's testimony was so cumulative as to preclude a new trial based on it, we conclude that the trial court did not abuse its discretion in denying the motion for new trial. Implicit in the trial court's evaluation of the diligence used to procure McGlotha's testimony was a finding that one of two things was true: either (1) McGlotha actually was present near the scene of the crime on the night in question, in which case Appellant could have secured his presence for trial had he exercised proper diligence; or (2) McGlotha was not present at the scene as he claimed and thus his testimony was not credible. The finding that the defense would have discovered McGlotha was a witness in time for trial had he actually been present at the scene is not an unreasonable one, given McGlotha's testimony that he stood by the house where the shooting took place talking to "a girl" before and after Joseph Jackson and McCain approached him and that other people were going in and out of the house and congregating in the yard. And a finding that a putative "new" witness could have been identified prior to trial through other witnesses known to the defense is a basis for denying a motion for new trial premised on new evidence. See Davis v. State, 283 Ga. 438, 445 (3) (C) (660 SE2d 354) (2008) (appellant who brought extraordinary motion for new trial

10

failed to show due diligence in obtaining and presenting testimony sooner where witness's affidavit showed that "she could have been identified through" a witness at trial, "showing that she also was available" to appellant at trial). And if testimony is not credible, it is not so material that it would probably produce a different verdict. See Jewell v. State, 261 Ga. 861, 862 (2) (413 SE2d 201) (1992) (no abuse of discretion in denying extraordinary motion for new trial where trial court found testimony of new witness to be "absolutely incredible," as findings about witness's lack of credibility showed the testimony was not so material that it would probably produce a different verdict).[3] The trial court did not abuse its discretion in rejecting McGlotha's testimony as the basis for a new trial.

Judgment affirmed. All the Justices concur.

_____

[3] The State argues that the circumstances of Appellant's acquisition of McGlotha's testimony suggest it was the product of witness influence. In particular, the State presented at a hearing on the motion for new trial recordings and testimony regarding telephone calls placed by Appellant in December 2017, while his original motion was pending. The trial court did not make any explicit findings about McGlotha's credibility, based on this or any other evidence, and we do not rely on evidence about the December 2017 calls either. But we do note that the evidence the *jury* heard about Appellant's apparent earlier efforts to influence witnesses makes it even less probable that McGlotha's testimony would produce a different verdict.

Decided December 10, 2018 — Reconsideration denied January 7, 2019.

Murder. Floyd Superior Court. Before Judge Colston.

Kevin A. Anderson, for appellant.

Leigh E. Patterson, District Attorney, Kayleigh A. Carter, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Sassano, Assistant Attorney General, for appellee.