**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: January 21, 2026

S25A1014.  WILLIAMS v. THE STATE.

LAND, Justice.

Qamar Williams was convicted of malice murder and other crimes related to the shooting death of Calvin Chappell.[1] On appeal,

---

[1] The crimes occurred in the early morning hours of April 15, 2019. On July 9, 2019, a DeKalb County grand jury indicted Williams, charging him with malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a convicted felon (Count 3), aggravated assault (Count 4), possession of a firearm by a convicted felon (Count 5), and possession of a firearm during the commission of a felony (Count 6).

After a trial from September 20 to 22, 2022, a jury found Williams guilty on all counts. On November 7, 2022, Williams was sentenced to serve life in prison without the possibility of parole for Count 1, ten years in prison for Count 5 (consecutive to Count 1), and five years in prison for Count 6 (consecutive to Count 5). Count 4 merged into Count 1 for sentencing purposes. The trial court stated that it was merging  Counts 2 and 3 into Count 1 for sentencing purposes, but Counts 2 and 3 were actually vacated by operation of law.

Williams filed a timely motion for a new trial on December 5, 2022, which he later amended on May 24, 2024. On June 20, 2024, the trial court denied Williams's amended motion after an evidentiary hearing. Williams timely filed a notice of appeal on July 19, 2024. On this case's first appearance before this Court, the State moved to remand it in order to incorporate the motion for new

Williams argues that the trial court erred in finding that newly discovered evidence would likely not have produced a different verdict and in both failing to give an involuntary intoxication charge and finding that the failure to give the jury that charge was harmless. Williams also argues that his trial counsel was ineffective in several respects. For the reasons below, we affirm Williams's convictions.

1. The evidence presented at trial showed as follows. On April 14, 2019, Williams and Chappell, who grew up together and were friends, went to several nightclubs with Mahamoud Fofana and Horatio Walker. Williams, a rap artist, was scheduled to perform at one of those clubs, Club One Fifty-One. In the early hours of April 15, the group returned to Fofana's residence in Decatur and then Williams and Fofana went to a Waffle House. Fofana testified that, while at Waffle House, Williams went to the bathroom for about 20

_____

trial hearing transcript. This Court granted that motion, struck the case from its docket, and remanded the case to the trial court. *Williams v. State*, No. S25A0393 (Jan. 23, 2025). The case is now again before this Court, with the supplemented record. It has been docketed to the August 2025 term of this Court and submitted for a decision on the briefs.

minutes and a worker asked what was wrong with Williams and if he was okay. Fofana stated that he "could see something was wrong with [Williams]," although he later clarified that Williams was not stumbling or slurring his words and did not appear to be on drugs. Likewise, when Walker was asked whether he saw Williams take drugs that night, he testified "no." When asked whether Williams was slurring or having trouble walking that night, Walker responded, "Not that I recall."

When Fofana and Williams returned home in the early morning hours, Fofana went to sleep in an upstairs bedroom. Another resident of the home, Joshua Baker, also slept upstairs, and Chappell slept in the downstairs living room. Walker went to work after returning home from the clubs.

While Chappell was getting ready for bed, Williams paced outside the house and smoked "something," stopping to "stare" at Chappell. Williams then entered the house, sat in a chair directly across the room from Chappell, and "star[ed] at [Chappell] for an extended period of time." At around 6:30 a.m., Williams shot at a

3

security camera in the living room and then shot Chappell several times while Chappell was sleeping. Baker woke up when he heard the gunshots, grabbed his firearm, and went downstairs to find Williams holding a handgun and mumbling while standing over Chappell's body. At trial, when asked about his interactions with Williams immediately after the shooting, Baker testified that Williams did not "seem like he was on drugs" and that he was "walking normally [and] talking normally."

Baker went upstairs, woke up Fofana, and told him that he believed Williams shot Chappell. Fofana came out of his room, saw Williams, and took the gun from him. Fofana "tried to ask [Williams] what was going on" and Williams stated that "[Chappell] was trying to do something to him." Baker called 911, and Fofana made Williams leave the house.

When police officers responded to Baker's call, they found Chappell dead and determined that he was killed by a gunshot wound to the head. The DeKalb County Medical Examiner's Office confirmed Chappell's death was a homicide and observed that

4

several of his multiple gunshot wounds would have resulted in death in "minutes." A crime scene investigator recovered security footage from inside the house, which captured the shooting, as well as nine spent shell casings and the handgun used in the shooting.

Fofana's cousin, Walt Sysavane, testified at trial that Williams called him on the afternoon of the shooting and asked him to ask Fofana to delete the video footage. According to Sysavane, when he asked Williams what happened, Williams said that Chappell "was tripping" and was "on drugs sometimes" and that he "had to take care of it because [Chappell] was tripping for real."[2]

After a trial from September 20 to 22, 2022, a jury found Williams guilty of malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault, possession of a firearm by a convicted felon, and possession of a firearm during the

---

[2] Williams did not testify at trial, although he did testify at the motion for new trial hearing. At that hearing, Williams testified that he did not remember asking Sysavane to destroy the video footage or telling him that he "had to take care of" Chappell, although Williams remembered Sysavane testifying to such at trial.

commission of a felony. In Williams's amended motion for new trial, he argued, among other things, that he was entitled to a new trial because newly discovered evidence would support his defense of involuntary intoxication. In support of this argument, Williams submitted affidavits from Robert Anderson and Dominique Dora and called both individuals to testify as witnesses at the motion for new trial hearing. At the time of the shooting, Anderson and Dora were promoters who booked talent for club performances. In his affidavit, Anderson stated that he booked Williams for a performance at Club One Fifty-One in the early morning hours on April 15, 2019.[3] Anderson stated that he saw Chappell "crushing pills" and "loading the pills into the [champagne] bottles" ordered by Williams, and Dora likewise testified at the motion for new trial hearing that she saw "somebody in [Williams's] entourage …

---

[3] Anderson's testimony at the motion for new trial hearing appears to contradict his affidavit with respect to whether he actually booked Williams at Club One Fifty-One that night or just came to the club to "support" Williams. Either way, it appears undisputed that Anderson spoke with Williams at the club that night. Dora testified at the motion for new trial hearing that Williams asked her to order him champagne "through the bottle girl" that night.

crushing something," which Dora believed to be drugs, and "pouring it in the [champagne] bottles." Anderson and Dora further testified that they saw Williams drink from one of the bottles containing the pills. Neither Anderson nor Dora identified the substance they saw put into Williams's champagne, nor could they identify how much of the champagne Williams drank.

2. Williams argues that the trial court erred in denying his motion for new trial based on newly discovered evidence. Specifically, Williams argues that Anderson's and Dora's affidavits and testimony – in which Anderson and Dora claim to have seen Chappell putting an unknown substance into champagne that Williams later drank – constituted new evidence which entitles him to a new trial. The trial court denied Williams's motion for new trial on these grounds, finding that the evidence could have been discovered prior to trial with due diligence, that Anderson and Dora were not credible, and that the new evidence was not so material that it would have resulted in a different verdict. For the reasons that follow, we affirm the trial court's ruling.

7

Georgia law requires a defendant seeking a new trial based on newly-discovered evidence to establish the following:

> (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

*Timberlake v. State*, 246 Ga. 488, 491 (1980) (citation and punctuation omitted). It is the defendant's burden to prove the existence of each of these factors. Id. A defendant's failure to show that even one of these requirements is met is sufficient to deny a motion for new trial. Id. A trial court's decision to grant or deny a new trial based on newly-discovered evidence is reviewed for abuse of discretion. See *Patterson v. State*, 314 Ga. 167, 181 (2022).

Williams's newly discovered evidence claim fails for two reasons. First, Williams made no showing as to why Anderson's and Dora's testimony could not have been acquired earlier with due diligence. See *Timberlake*, 246 Ga. at 491 ("[A]lthough the defendant

8

has stated that the evidence has come to his attention since the trial, he has made no showing that it was not owing to want of due diligence that he did not acquire it sooner."). Williams claims that neither he nor trial counsel were ever "made aware that these witnesses had any information useful to Mr. Williams, let alone regarding a possible defense." However, Anderson and Dora were known to Williams prior to the shooting, and the record shows that they both spoke with Williams that night. Indeed, Dora was the one who ordered Williams's drinks that night. Given this evidence, Williams provides no reason as to why he did not, and could not have, interviewed Anderson and Dora prior to trial and has not shown that he could not have obtained this evidence prior to trial through the exercise of due diligence. This claim of error therefore fails. See *Timberlake*, 246 Ga. at 491–92 (denying a motion for new trial based on alleged newly discovered evidence when "[t]here was no factual showing that this evidence could not have been discovered by the exercise of ordinary diligence").

Second, even if we were to accept Williams's argument that he

was unable to acquire Anderson's and Dora's testimony earlier with due diligence, Williams has not demonstrated that this testimony is "so material" that it would have probably produced a different verdict. *Timberlake*, 246 Ga. at 491. If Williams's newly acquired evidence showed that he involuntarily ingested an intoxicating substance in the form of a drink that had been drugged without his knowledge, this would be a far more compelling case. However, Williams's evidence falls well short of making that showing. As the trial court noted in its order denying Williams's motion for new trial, Anderson and Dora could not identify the substance allegedly mixed into Williams's champagne and could not testify as to whether Williams wanted that substance mixed into his champagne or how much of the champagne he drank. Thus, we are left to speculate as to these issues, and speculation provides no basis for granting a new trial. Without evidence that Williams *involuntarily* ingested an intoxicating substance, there is no basis to conclude that Anderson's and Dora's testimony was so material that it would have probably produced a different verdict. Further, a defense of involuntary

intoxication is available only when "the [defendant], because of involuntary intoxication, did not have sufficient mental capacity to distinguish between right and wrong in relation to such act." OCGA § 16-3-4(a). As the trial court observed in its order denying Williams's motion for new trial, Williams's decision to shoot directly at the living room's security camera before shooting Chappell suggests that he did have sufficient mental capacity to distinguish between right and wrong because he knew video footage of the shooting would be incriminating. Anderson's and Dora's testimony is silent on this issue and therefore does nothing to rebut this evidence. Further, witnesses who observed Williams's behavior at Waffle House and at the nightclubs they visited did not believe he was on drugs. For all of these reasons, Williams has failed to show that the proffered testimony of Anderson and Dora was so material that it would have probably produced a different verdict. See *Dick v. State*, 248 Ga. 898, 900 (1982) (concluding that newly discovered evidence in the form of a letter from a co-conspirator stating that the appellant had been involuntary drugged did not satisfy *Timberlake*'s

materiality standard because the appellant "failed to show … how the alleged consumption of drugs without his knowledge affected his voluntary behavior").

3. Williams claims that the trial court erred by failing to instruct the jury on Williams's involuntary intoxication defense. This claim fails.

A defense of involuntary intoxication is available only when "the [defendant], because of involuntary intoxication, did not have sufficient mental capacity to distinguish between right and wrong in relation to such act." OCGA § 16-3-4(a). Generally, there need only be "slight evidence supporting the theory of the [requested jury] charge." *McClure v. State*, 306 Ga. 856, 863 (2019) (citation omitted). Whether the evidence presented is sufficient to warrant giving a charge is generally a question of law that this Court reviews de novo. Id. Here, although trial counsel requested an involuntary intoxication charge at trial, the record does not indicate that trial counsel objected to the trial court's failure to give this charge. Thus, this Court reviews the trial court's decision for plain error. See *State*

*v. Alvarez*, 299 Ga. 213, 214 (2016) (applying plain error review to trial court's decision not to give a requested jury charge when defense counsel failed to object to trial court's decision not to include that charge).

The test for plain error is comprised of four prongs.

First, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*State v. Johnson*, 305 Ga. 237, 239 (2019) (quoting *State v. Kelly*, 290 Ga. 29, 33 (2011)). Williams does not demonstrate any error or defect, much less a clear and obvious error or defect, for the purposes of plain error review. Williams presented no evidence at trial that he was involuntarily intoxicated. He presented evidence that he was

in the bathroom at Waffle House for a long time and that he was acting strangely before the shooting  but he presented no evidence suggesting that he had involuntarily consumed any substances or that he lacked sufficient mental capacity to distinguish between right and wrong at the time of the shooting. Accordingly, the trial court did not commit any error by refusing to instruct the jury on involuntary intoxication. Cf. *Redding v. State,* 311 Ga. 757, 760-61 (2021) (holding that the trial court did not err by not instructing the jury that appellant had no duty to retreat when no evidence supported appellant's claim that the victim was the aggressor).

Further, even if we were to assume that the trial court did err by not instructing the jury on involuntary intoxication because Williams presented "slight" evidence of involuntary intoxication, and even if that error were "clear or obvious," Williams has not shown that the trial court's failure to do so "affected the outcome of the trial court proceedings" as is required by our plain error analysis. *Johnson,*  305 Ga. at 239. Williams was caught shooting Chappell multiple times on camera while Chappell slept, and

14

Williams failed to provide evidence at trial showing what substance he allegedly consumed and how that substance affected his behavior that night. Given this, we do not see how the outcome of Williams's trial would have been different had the trial court instructed the jury on involuntary intoxication. See *Munn*, 313 Ga. at 723 (identifying no plain error in failing to give a justification charge when appellant's evidence supporting such a charge was meager and was strongly undermined by other evidence presented to the jury).

4. Williams argues that his trial counsel rendered constitutionally ineffective assistance because he failed to obtain security footage from Club One Fifty-One from the night of the incident and from the Waffle House that Williams and Fofana visited after visiting the nightclubs. Williams alleges that this video footage would have shown him acting strangely on the night of the shooting and may have shown someone drugging his drink. Williams also claims his counsel was ineffective because he failed to call an expert to testify about the effects that involuntary intoxication may have had on his behavior. We conclude that both of Williams's

15

ineffective assistance claims fail for the reasons stated below.

A defendant claiming ineffective assistance of counsel must prove deficient performance by his counsel and resulting prejudice. See *Strickland v. Washington*, 466 US 668, 687 (1984). To prove deficient performance, a defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. To establish prejudice, a defendant must demonstrate that, absent counsel's error, there is a "reasonable probability" that the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," and the burden on a defendant to prove this prejudice is a "heavy" one. *Eaker v. State*, 315 Ga. 202, 206 (2022) (citation omitted). "If either *Strickland* prong is not met, this Court need not examine the other prong." *Palmer v. State*, 303 Ga. 810, 816 (2018).

(a) Williams argues that his trial counsel rendered ineffective assistance by failing to obtain surveillance footage from Club One

Fifty-One and from Waffle House. We disagree.

Williams cannot demonstrate ineffective assistance of counsel because he cannot show that counsel's alleged errors prejudiced his defense. A defendant cannot demonstrate prejudice with "mere 'speculation.'" *Arnold v. State*, 321 Ga. 434, 449–50 (2025). See also *Martin v. McLaughlin*, 298 Ga. 44, 47 (2015) ("[W]ith respect to claims of ineffective assistance of counsel, 'a silent or ambiguous record' is not enough to carry [appellant]'s burden."); *McClarin v. State*, 289 Ga. 180, 182 (2011) (noting that mere speculation cannot carry a defendant's burden because it makes it "impossible … to show there is a reasonable probability the results of the proceedings would have been different").

Williams alleges that his counsel should have obtained video footage from Club One Fifty-One and Waffle House, but he did not produce that evidence in connection with his motion for new trial. With respect to the Waffle House video footage, Williams concedes on appeal that the footage no longer exists. Even if the footage did exist, based on Williams's allegations as to what occurred at Waffle

House, it would only show Williams disappearing into the bathroom for an extended period of time and potentially acting strangely in a manner such that Fofana testified that he could "could see something was wrong with [Williams]."It would not show him involuntarily consuming an intoxicating substance or shed any light on whether he was involuntarily intoxicated. Thus, Williams has not shown that he was prejudiced by the failure of counsel to obtain the Waffle House video footage because he cannot show that there is a "reasonable probability" that the outcome of the trial would have been different had the footage been obtained. *Strickland*, 466 US at 694.

Similarly, Williams has failed to show that he was prejudiced by his counsel's failure to obtain video footage from Club One Fifty-One. There is no evidence that was presented to the trial court that shows what the video footage would have depicted, if it ever existed. Without such evidence, it is impossible for Williams to show that there is a reasonable probability the result of the proceedings would have been different but for counsel's alleged deficient performance.

See *Woods v. State*, 275 Ga. 844, 849-50 (2002) (concluding that appellant failed to show that counsel's failure to introduce a videotape into evidence prejudiced the defense because it was not possible to determine what the tape depicted, including matters defendant claimed were critical to his defense).

(b) Williams argues that his trial counsel rendered ineffective assistance by failing to call an expert to testify as to the effects that involuntary intoxication may have had on his behavior. However, Williams did not provide or proffer any testimony from an expert on involuntary intoxication in connection with his motion for new trial, and it would be mere speculation for us to assume what such an expert would have testified to if called at trial. This claim therefore fails because Williams cannot show prejudice. See *Pauldo v. State*, 317 Ga. 433, 437 (2023) ("It is well established that a defendant fails to establish prejudice under *Strickland* when he merely contends that trial counsel was deficient for failing to present an expert, without also presenting evidence at the motion-for-new-trial hearing about what the potential expert would have testified to at

19

trial.").

(c) Williams also argues that the Court should consider the combined effect of trial counsel's alleged deficiencies when determining whether the requisite prejudice under *Strickland* has been shown. See *Lofton v. State*, 309 Ga. 349, 360 (2020) ("The combined effect of counsel's unprofessional errors must be considered in assessing whether the requisite prejudice has been shown."); *Scott v. State*, 317 Ga. 218, 226 n.5 (2023) ("[A]ssessing the cumulative effect of multiple deficiencies on the part of his trial counsel ... has long been part of the *Strickland* analysis that governs claims of ineffective assistance of counsel." (cleaned up)).

As discussed above, the record contains no evidence that trial counsel's alleged errors had any prejudicial effect on Williams's defense at trial. For this reason, there is no cumulative prejudice to consider, and Williams's claim of cumulative prejudice fails.

*Judgment affirmed. All the Justices concur.*