## 46861. HURD v. THE STATE.

EBERHARDT, Judge. Defendant appeals from a judgment of conviction and sentence for bastardy, complaining principally of the admission into evidence, over objection, of the results of a paternity blood test which did not establish nonpaternity but indicated only that defendant was

among 43% of the male population that could have fathered the child. As we understand it, this was the third trial of the case. There seems to be no dispute that defendant, the mother and the child all submitted to the tests upon defendant's request and by agreement between the solicitor's office and defendant's former counsel before the first trial. The terms of the agreement, however, are not clear, the State contending it was agreed that if the tests excluded defendant as the father the case would be dead docketed, and if he were not excluded the State could introduce the results in evidence. It appears that Mr. Bowers, assistant solicitor, tried the case the third time, and that Mr. Webb, assistant solicitor, handled matters prior to that. The State relies upon the following colloquy at the third trial to establish its interpretation of the agreement:

"Mr. Bowers [addressing Mr. Webb, who was called in to relate the terms of the agreement]: There's been a motion made by Mr. Burger [defendant's counsel at the third trial] to exclude the results of the paternity blood test in this case. I was telling the judge it was my impression that back when this case ... Mr. Dettlebach [defendant's former counsel] requested the blood test. I was thinking ... maybe I'm wrong ... he talked to you about it. Was there any agreement about how it would be done? Did we agree to let him have the blood test? Mr. Webb: Yes, sir. It was made under the order of the court, Your Honor. Mr. Dettlebach requested that blood tests be made sometime when the case was on ... one of the first times, and the blood test was made under your order of the parties, the child and the mother. It was my understanding that Mr. Dettlebach said at the time that the results of the blood test would be admissible if it came back against the defendant for whatever value it would be to the jury in determining the paternity in the case. However, I will state that, as I recall it, when this case came on for trial, Mr. Dettlebach did raise the question that he didn't remember expressly agreeing for it to be admissible before a jury, and at that time we argued

that before Your Honor, and I stated that it was my understanding that Mr. Dettlebach had agreed for it to be heard by the jury. And Mr. Dettlebach didn't say this is not so, but he just . . . He did argue not to admit it, and Your Honor decided to admit it. There's nothing in writing. As best I recall it, Your Honor, it was an understanding that it would be admissible. The Court: Well, the Court ordered the blood test on the request of Mr. Dettlebach and the solicitor's office, and I have consistently ruled that they can go in, so I'll overrule the motion." *Held:*

1. The purported agreement was not in writing. It does not appear to have been made in open court. Its terms are uncertain. The trial court entered no written order establishing its terms at the time the blood tests were ordered, nor were they established by the rulings admitting the results of the tests into evidence. Under these circumstances this court can make no determination as to whether the results of the tests were admissible on the third trial by virtue of the purported stipulation or agreement, and the enumeration of error complaining of the admission of the results must be disposed of without regard to the purported agreement.

2. The result of the blood tests in the instant case did not establish nonpaternity but indicated only that defendant was among 43% of the male population that could have fathered the child. There is no statute in this jurisdiction which governs the admissibility of paternity blood tests in a criminal case, nor is there any controlling case law dealing with the admissibility of inconclusive results of such tests. Compare CPA § 35 (a) (*Code Ann.* § 81A-135 (a)); Uniform Act on Blood Tests to Determine Paternity, 9 ULA 110 et seq.; *Rider v. Rider,* 110 Ga. App. 382 (138 SE2d 621); *Richardson v. State,* 94 Ga. App. 888 (96 SE2d 535).

"In the absence of a specific statutory provision, or where the applicable statute provides only for the admission of test results evidencing non-paternity, evidence of blood grouping test results which fail to establish non-patern-

ity but indicate only that a person of a particular blood type must have been the father of the child, is generally held inadmissible." 10 AmJur2d 867, Bastards, § 32. "The general rules that evidence of blood grouping test results excluding paternity is admissible, and that evidence of results failing to establish nonpaternity is inadmissible, apply to bastardy proceedings." 10 AmJur2d 928, Bastards, § 118. The cases are collected in 163 ALR 939, 958; 46 ALR2d 1000, 1022, § 10 (c, d). Thus in People v. Nichols, 341 Mich. 311 (67 NW2d 230), a bastardy case decided in the absence of a paternity blood-test statute, it was held that the admission of testimony concerning results of blood tests which did not establish defendant's nonpaternity constituted reversible error. It was there said that "All the scientific evidence in this case and in the cited cases is in accord that the results of blood tests can rule out but can never establish paternity," and that the result of the tests which failed to exclude paternity was "totally irrelevant" and had "no probative value whatsoever" for the purpose of establishing paternity. Similarly, in State v. Morris, 156 Ohio St. 333 (102 NE2d 450), a bastardy proceeding, it was held that the admission of results of blood-grouping tests, which disclosed only a possibility of parentage, was prejudicial error requiring reversal. The Ohio Supreme Court, quoting from State v. Clark, 144 Ohio St. 305, 312 (58 NE2d 773) stated at p. 337: "'This sort of test is of comparatively recent origin, but medical authorities agree on its accuracy and reliablilty to establish nonpaternity in the great majority of instances. In the present state of development, however, it is of no value in proving paternity.' Although that statement may be regarded as dicta in that case it is pertinent here, for we now have the specific question of the competency of blood-grouping tests to prove paternity. Therefore, it may be here repeated that it is established that there is complete accord of experts in biology upon the proposition that results from such blood tests, disclosing a mere possibility of paternity,

must be discarded and excluded from evidence as being valueless; and that their admission in evidence is prejudicial."

In the instant case, as in the cited cases and those collected in the ALR annotations, the test results were valueless but were permitted to pose as relevant testimony to be weighed by the jury, and could not have failed to mislead the jurors into believing that this totally irrelevant evidence might be considered as having probative value. Hence the admission of these results constituted harmful error requiring reversal.

3. Since a new trial must be had, where the evidence may not be the same as here, we make no determination as to whether the evidence otherwise supported the verdict, but compare *Samples v. State*, 119 Ga. App. 154 (166 SE2d 389).

*Judgment reversed. Bell, C. J., and Evans, J., concur.*
SUBMITTED JANUARY 4, 1972—DECIDED JANUARY 24, 1972.

*G. Ralph Burger,* for appellant.
*Hinson McAuliffe, Solicitor, James L. Webb, Frank A. Bowers,* for appellee.