## 57810. MILLER v. THE STATE.

McMURRAY, Presiding Judge.

Defendant was charged by accusation with the offense of misdemeanor in the abandonment of his minor (illegitimate) child. He was convicted and sentenced to serve a term of 12 months but suspended until the 18th birthday of the child or until such time as the court may direct upon the condition that the defendant make payments for the support of said child, that is, to pay child support of $750 by December 14, 1978, and to pay child support of $25 per week beginning December 8, 1978, and to abide by certain other special terms and conditions. Defendant appeals. *Held:*

1. Subsequent to the defendant's filing of his brief in this court and after a careful review of the charge by the trial court made during the trial that court became of the opinion that an error had been committed by the court reporter and ordered the court reporter to prepare a supplemental record. The court reporter was directed to change the language of the court's charge wherein the court was instructing the jury as to proof of good character and reasonable doubt to change the word "a" to the word "no." The sentence in question should read as follows:

"However, if you entertain no reasonable doubt as to the guilt of the Defendant, then regardless of any evidence as to the good character of the Defendant, you would be authorized but not required to find the Defendant guilty." This change, of course, changed the entire meaning of the sentence. If it had not been changed the instruction as given would have been error for if the jury entertained a reasonable doubt as to the guilt of the defendant it would have the duty to give the defendant the benefit of the doubt and acquit him. Whereupon, the court reporter prepared a supplemental record which was transmitted to this court and in her certificate acknowledged a "stenographic error in transcription," but thereafter stating that it was "corrected pursuant and in conformity with an Order of the Court."

Prior to the adoption of the present Appellate Practice Act in 1965, the trial court was required to approve the brief of evidence as to what transpired in the lower court. With the adoption of the new Appellate Practice Act the legislature provided that, "[i]f anything material to either party is omitted from the record on appeal or is misstated therein, . . . the trial court, either before or after the record is transmitted to the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected, and, if necessary, that a supplemental record shall be certified and transmitted by the clerk of the trial court." See Code Ann. § 6-805 (f) (Ga. L. 1965, pp. 18, 24).

Following the preparation of the supplemental transcript by the court reporter counsel for defendant upon receiving notice thereof, moved to correct the transcript as thus prepared and also a request for a hearing "to resolve the difference so as to make the transcript conform to the truth." A hearing was then held by the trial court and the defendant's motion to correct the transcript was overruled. This hearing was also held in conformity with Code Ann. § 6-805 (f), supra, although the trial court "of its own initiative" had ordered the correction found in the supplemental record.

Counsel for defendant has now moved this court to dismiss the supplemental record and at the same time has filed a supplemental enumeration of error contending

that the trial court was in error in changing the language in the original transcript. The motion to dismiss this supplemental record is denied inasmuch as the trial court was within the bounds of discretion to change the language of the charge. The trial court is still the final arbiter of any differences in the preparation of the record. Having read the additional supplemental transcript with reference to the hearing as to the preparation of the record we find no abuse of discretion by the trial court.

2. The trial court's correction of the alleged erroneous instruction noted above renders the change as given as to good character to be correct and shows no error. See *Epps v. State,* 19 Ga. 102 (4); *Seymour v. State,* 102 Ga. 803 (30 SE 263); *Loomis v. State,* 78 Ga. App. 336, 338 (9), 358-359 (51 SE2d 33). Cf. *Reaves v. State,* 146 Ga. App. 409, 412 (6) (246 SE2d 427). The enumeration of error complaining of the now corrected charge is not meritorious.

3. The request to charge that a defendant cannot be found guilty of the crime of abandonment until it is proven beyond a reasonable doubt that the defendant is the natural father of the abandoned child was amply covered in the general charge, and it was not necessary to give the written request verbatim. This request was fully covered in the charge as given.

4. As shown in Division 1 above the court charged the law of good character with reference to the weight and importance which should be given to such evidence. The written request with reference to character evidence was also fully covered in the general charge by the court.

5. During cross examination of the defendant he was asked by state's counsel if he had had a blood test. The witness defendant replied: "Yes sir, I have." Whereupon, the jury was excused and counsel for defendant moved for mistrial on the grounds that counsel for the state had intentionally sought to introduce testimony in regard to a blood test knowing that such a paternity test was inadmissible. Counsel for defendant cites *Hurd v. State,* 125 Ga. App. 353, 355-357 (2) (187 SE2d 545), wherein this court in 1972 reversed a bastardy case because of the admissibility of a paternity blood test which was inconclusive as to paternity. The blood test in that case did

not establish non-paternity but indicated only that the defendant was among 43% of the male population that could have fathered the child. However, in 1973, Code Ann. § 74-9902 (Ga. L. 1941, pp. 481, 483; 1946, pp. 63, 64; 1952, pp. 173, 174; 1956, p. 800; 1960, pp. 952, 953; 1965, p. 197; 1967, pp. 453, 454) was amended to authorize a paternity blood test in the event the accused father requests it and all parties shall be required to submit to such blood test, "the results of which shall be admissible in evidence as provided above," as to the issue of paternity whether tendered by the state or the accused. Based upon this change in the law it is doubtful that *Hurd v. State,* 125 Ga. App. 353, 357, supra, would be controlling any longer. Under the present Code Ann. § 74-9902, supra, a blood test which was taken in conformity thereto would be admissible in evidence. However, the blood test issue was not pursued any further after the court overruled the motion for mistrial. The mere asking of the question as to whether or not the defendant had had a blood test was not harmful inasmuch as it did not refer to a paternity blood test or any other type of blood test. The court did not err in overruling the motion for mistrial. Nor was it necessary at that time for the trial judge to instruct the jury to disregard any inference raised with reference to the question as to a blood test as no remedial instruction was called for by the court.

6. During the examination of the mother of the child she was asked when this child was conceived to which she answered, "It was either the last of July or the first of August [1976]." No objection was made to this question and answer. Thereafter, she was again asked about her sexual relationships with the defendant as to an occasion occurring in his mobile home, again during the period last of July or first of August, 1976. She answered that she did have sexual relations with him on that occasion. Objection was then made to the following question: "Did you become pregnant as a result of that act of sex?" The answer being, "Yes, sir." The witness had also answered other questions that she had not had sexual relations with anyone else, although she did not testify to any other occasion of sexual intercourse occurring during the period the last of July or the first of August 1976. After much

colloquy out of the presence of the jury, counsel for the state was required to lay further foundation for the question, that is, that she had had no sexual relations with anyone other than the defendant, which question and answer was then allowed.

7. The witness' mother was asked to testify as to "what happened on the day the baby was born regarding the birth of the child." Objection was made that this question was irrelevant and immaterial to the issue in the case and that it was broad and vague and all encompassing. The witness had testified previously that she had told no one that she was pregnant and had not seen a doctor during the course of pregnancy. The defendant now raises the issue that the question was asked for the purpose of invoking sympathy and to inflame the jury's mind against the defendant. No such objection was made at the time of trial. Generally, every fact or circumstance serving to throw light on the issue being tried constitutes proper evidence. *Miller Service, Inc. v. Miller,* 76 Ga. App. 143, 144 (3), 151 (45 SE2d 466); *Ga. Savings Bank &c. Co. v. Marshall,* 207 Ga. 314 (1) (61 SE2d 469). Had the defendant objected on the theory that it was presented in evidence to invoke sympathy and to inflame the jury's mind we would be faced with a different problem. However, there was other testimony that the child was born prematurely, the mother not realizing she was giving birth to the child until the actual event arrived. Where the admissibility of evidence is doubtful, the trial court should admit it and leave its weight and effect to be determined by the jury. See *Goodman v. State,* 122 Ga. 111, 118 (49 SE 922); *West v. State,* 120 Ga. App. 390, 392 (2) (170 SE2d 698). There is no merit in this complaint.

*Judgment affirmed. Banke and Underwood, JJ., concur.*

SUBMITTED MAY 2, 1979 — DECIDED JULY 6, 1979.

*Sims & Fleming, Carlton A. Fleming, Jr., John S. Sims, Jr.,* for appellant.

*T. V. Williams, Jr., Solicitor, Preston & Preston,*

*Robert H. Preston,* for appellee.