## 69143. BRITTEN v. THE STATE.
(328 SE2d 556)

POPE, Judge.

On January 9, 1978 appellant Charles Britten pled guilty to a charge of abandonment of a minor child. He was sentenced to serve twelve months in prison, but this was suspended provided that he make child support payments of $15 per week for the minor child until the child married, became self-supporting, died or became 18 years of age. On March 1, 1984 appellant filed an extraordinary motion for new trial. The ground for this motion was newly discovered evidence, the results of human leukocyte antigen (HLA) blood tests administered on September 26, 1983 to appellant, to the minor child

and to the child's mother. The test results showed that appellant could not be the biological father of the child. Appellant brings this appeal from the trial court's denial of his extraordinary motion. *Held*:

1. Under the circumstances in this case, we conclude that appellant's extraordinary motion for new trial was the proper procedural vehicle by which to challenge his guilty plea on the ground of newly discovered evidence. See *Waye v. State*, 239 Ga. 871 (1) (238 SE2d 923) (1977); see also *Martin v. State*, 240 Ga. 488 (241 SE2d 246) (1978). The trial court incorrectly held that such a motion was not proper in this case; however, since the trial court's order also addresses the merits of the case, we turn our attention thereto.

2. "The standard for granting a new trial on the basis of newly discovered evidence is well established. 'It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.' [Cits.] All six requirements must be complied with to secure a new trial. [Cits.] . . . Failure to show one requirement is sufficient to deny a motion for a new trial. [Cit.]" *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792) (1980). The trial court placed considerable emphasis upon the "lengthy delay from 1978 until 1984" during which period appellant remained silent, only to come forward recently and claim that newly discovered evidence should entitle him to a trial which he had previously waived. The court noted that appellant made reasonably regular payments on his child support obligation from January 1978 until February 1984. The court also noted: "The extraordinarily long lapse of time between the entry of guilty plea and the filing of the Extraordinary Motion for New Trial casts a reflection upon the good faith and credibility of the moving party." Focusing our attention, as did the trial court, on the issue of appellant's diligence, we note that "whether diligence used was ordinary, or less than ordinary, must be determined in each case by comparing the conduct under consideration with that of the ordinary man under similar circumstances. Ordinary diligence is affected by one's surroundings and attendant circumstances." *Orr v. State*, 5 Ga. App. 76 (2) (62 SE 676) (1908).

At the hearing on the extraordinary motion for new trial, appellant testified that at the time of his guilty plea he had no money to pay for paternity blood testing, but that over the intervening years he was able to accumulate the $325 it cost him for the HLA blood tests.

He also testified that he retained counsel to represent him during the January 1978 proceeding but that he had been employed only part-time during 1977. Appellant testified that he intended to plead not guilty to the abandonment charge but was persuaded to plead guilty by his retained counsel who purportedly argued that since appellant had not taken a blood test to determine paternity, he had no grounds to challenge the abandonment charge. Appellant further testified: "When we went to court, I told the prosecuting attorney, I said, I know whose kid this is and I said, you get that person and that girl together and if they lie together and say that it's not their kid, then I almost certainly have to say it's mine. I was going with the girl, yes, true enough, you know. And so they came, they didn't come to court, they took us in a little room and they both denied it not [sic] being their child, but I'll bet a million to one, anything, if they ever take blood tests between those two people it will come out considerably theirs, not considerably, one hundred percent positive."

Since his guilty plea appellant has attended night school and has obtained a high school diploma. During periods of financial hardship, appellant's grandmother made the child support payments on his behalf. He is now married and is the father of a four-year-old daughter. He has been steadily employed for the past three years earning between $700 and $800 per month as a gardener and custodian. In August of 1983 appellant brought a civil action pursuant to OCGA § 19-7-40 et seq. to determine the paternity of the subject child; that case is pending.

The record clearly shows that at the time of his guilty plea in 1978 appellant was aware of the use of blood tests for the purpose of determining paternity. Indeed, the statute under which appellant was convicted expressly provided for such tests and their admissibility as evidence. Ga. L. 1973, p. 697, § 2. See *Miller v. State*, 150 Ga. App. 597 (5) (258 SE2d 279) (1979). However, the accused father was required to pay for same. Ga. L. 1973, pp. 697, 700. In 1980 the statute was amended to include the requirement that "where the results of those blood tests and comparisons indicate that the alleged parent cannot be the natural parent of the child, the jury shall be instructed that if they believe that the witness presenting the results testified truthfully as to those results and if they believe that the tests and comparisons were conducted properly, then it will be their duty to decide that the alleged parent is not the natural parent." Ga. L. 1980, pp. 1374, 1381; OCGA § 19-10-1 (f) (1). Also in 1980 the legislature specifically included HLA testing, if available, for the purpose of proving or disproving parentage. Ga. L. 1980, p. 1374, § 1; OCGA § 19-7-45. The accused father remained responsible for the initial cost of such testing. OCGA § 19-10-1 (f). On November 1, 1983 our Supreme Court held unconstitutional the requirement in the abandon-

ment statute that the accused father must initially pay for paternity blood testing himself. *Pierce v. State*, 251 Ga. 590 (308 SE2d 367) (1983). An indigent is now entitled to paternity blood testing at county expense in a prosecution for abandonment where the test could conclusively demonstrate his innocence. Id. It has been noted that the pooling of the results of the HLA test with those of other blood tests can lead to a significant positive statistical probability of paternity that approaches one hundred percent. Note, 36 Vand. L. Rev. 1587, 1591 (1983). Paternity blood testing prior to development of HLA testing was far less reliable. Id. See generally *Hurd v. State*, 125 Ga. App. 353 (2) (187 SE2d 545) (1972).

As a general rule, motions for new trial on the ground of newly discovered evidence are not favored. *Jones v. State*, 156 Ga. App. 543 (3) (275 SE2d 119) (1980). Such motions are addressed to the sole discretion of the trial court, which will not be controlled unless abused. Id. "[I]t must be apparent that grave injustice would result unless the newly discovered evidence be admitted at another trial." *Schaefer v. Schaefer*, 46 Ga. App. 789, 790 (169 SE 256) (1933). Applying the "ordinary man" standard of *Orr v. State*, supra, to the conduct of appellant in this case, we are persuaded that the trial court abused its discretion in concluding that appellant was not sufficiently diligent in acquiring his "newly discovered evidence." It is clear from the record that appellant's efforts to obtain paternity blood testing were hindered by circumstances not entirely within his control. In our view, the facts of this case conclusively establish that appellant's diligence was that of the ordinary man under similar circumstances. We are further buttressed in our position by the aforementioned advances in medical science and changes in the law regarding paternity, all of which have only recently become available and pertinent to abandonment proceedings such as the case at bar. "Ascertainment of the factual truth in the adjudication of any controversy is a consummation devoutly to be wished. Time was when the courts could rely only upon human testimony. But modern science brought new aids. The microscope, electricity, X-ray, psychology, psychiatry, chemistry and many other scientific means and instrumentalities have revised the judicial guessing game of the past into an institution approaching accuracy in portraying the truth as to the actual fact where, in the pursuit of which, scientific devices may be applied . . . If the courts do not utilize these . . . methods for acquiring accurate knowledge of pertinent facts they will neglect the employment of available, potent agencies which serve to avoid miscarriages of justice." *Berry v. Chaplin*, 74 Cal. App. 2d 652, 668 (169 P2d 442, 453) (1946) (McComb, J., concurring specially). Appellant is entitled to a new trial.

*Judgment reversed. Banke, C. J., concurs. Benham, J., concurs in the judgment only.*

Decided February 27, 1985 —
Rehearing denied March 14, 1985 —

*Jesse G. Bowles III*, for appellant.
*John R. Parks, District Attorney, Barbara A. Kessler, Assistant District Attorney*, for appellee.