297 Ga. 567
FINAL COPY

S14G1149.  BHARADIA v. THE STATE.

BENHAM, Justice.

In 2003, a jury convicted appellant Sandeep Bharadia of burglary, aggravated sodomy, and aggravated sexual battery with respect to his breaking into the victim's apartment and physically attacking her.  Additional details of the facts shown at trial are set forth in the opinion of the Court of Appeals which affirmed the trial court's denial of appellant's initial motion for new trial (*Bharadia v. State*, 282 Ga. App. 556 (639 SE2d 545) (2006) (*Bharadia I*)), and the Court of Appeals opinion affirming the trial court's denial of appellant's extraordinary motion for new trial.  *Bharadia v. State*, 326 Ga. App. 827 (755 SE2d 273) (2014) (*Bharadia II*).  We granted appellant's petition for a writ of certiorari to review *Bharadia II*.

1.  *Additional facts and procedural history.*

Bharadia's co-defendant, Sterling Flint, was also charged with these crimes.  Flint negotiated a guilty plea and testified against appellant at appellant's trial.  While appellant's first motion for new trial was pending,

appellant, represented by new counsel, sought and was granted funds to conduct DNA testing upon gloves that were seized ten days after the crimes from the home of Flint's girlfriend, where Flint occasionally resided. The victim identified these gloves at trial as the type her assailant wore during the assault upon her. DNA testing on the gloves at a private testing facility showed none of the DNA recovered from the gloves matched appellant's DNA. Instead, the testing revealed the DNA of an unknown male and an unknown female. Appellate counsel informed the trial court and the prosecutor of the results, and provided them with a written report prepared by the expert who tested the gloves recommending additional testing to compare the DNA found on the gloves to the DNA of the victim and the co-defendant, but the State opposed appellant's request for additional funding for such testing, and the trial court denied the request. Appellant amended his first motion for new trial to assert the DNA test result was newly discovered evidence.

In the order denying the first motion for new trial, as amended, the trial court conducted an analysis based upon the factors set forth in *Timberlake v.*

*State*[1] for granting a new trial on the basis of newly discovered evidence, and found that a new trial was not required because Bharadia failed to meet two of the six factors. The first *Timberlake* factor requires a showing that the newly discovered evidence has come to the movant's knowledge since the trial. *Timberlake,* supra, 246 Ga. 488, 491 (1). With respect to this factor, the trial court found "that DNA testing of the gloves was available to the Defendant prior to trial. Therefore, the DNA testing is not 'newly discovered.'" The trial court also found Bharadia failed to meet the third factor set forth in *Timberlake* in that the evidence was not so material that it would probably produce a different verdict. The trial court did not make any finding in this order relating to the second of the *Timberlake* factors — the due diligence requirement. In *Bharadia I*, the Court of Appeals, in 2006, affirmed the trial court in an opinion

---

[1] 246 Ga. 488 (271 SE2d 792) (1980). In *Timberlake*, this Court stated:

> The standard for granting a new trial on the basis of newly discovered evidence is well established. "It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness."

(Citation omitted.) Id. at 491.

that did not address *Timberlake* or the newly-discovered evidence issue because these issues were not raised by appellant.[2]

After the first motion for new trial and appeal was lost, appellant's counsel sought and received assistance from the Georgia Innocence Project (GIP). In early 2009, appellate counsel informed the prosecutor that the GBI had agreed to perform its own DNA analysis on the gloves if requested by the prosecutor. The prosecutor responded that, in order to obtain DNA testing, appellant would be required to comply with the procedure set forth in OCGA § 5-5-41 for filing an extraordinary motion for new trial and a motion for DNA testing. After apparently taking the time to explore all potential grounds for filing such a motion, on February 23, 2012, GIP assisted appellate counsel in filing an extraordinary motion for new trial, as well as a motion for additional DNA testing to compare the DNA on the gloves with that of the co-defendant or, alternatively, for a comprehensive CODIS[3] database search to compare the

---

[2] *Bharadia I*, 282 Ga. App. at 559-560 (6).

[3] CODIS is the FBI's Combined DNA Index System. Http://www.nij.gov/266/pages/backlogs-codis.aspx. "Since its authorization in 1994, the CODIS system has grown to include all 50 States and a number of federal agencies. CODIS collects DNA profiles provided by local laboratories taken from arrestees, convicted offenders, and forensic evidence found at crime scenes." *Maryland v. King*, ___ U. S. ___ (133 SCt 1958, 186 LE2d 1) 2013).

results of the previous DNA testing to DNA profiles in the database. The trial court denied the request for further DNA testing but granted the request for a CODIS database search. That search found a match to the co-defendant's DNA. The trial court then granted Bharadia's motion for a DNA sample to be obtained from the co-defendant for confirmation testing, and the match was confirmed. Nevertheless, the trial court denied the extraordinary motion for new trial. Applying again the *Timberlake* factors for granting a new trial on the basis of newly discovered evidence, the trial court found that Bharadia satisfied all but the first two factors. The trial court again found that Bharadia failed to show that the evidence came to his knowledge since the trial and thus was not newly discovered (as required by factor 1), and, unlike the initial motion for new trial order, the trial court addressed the due diligence issue and found Bharadia failed to show that the delay in acquiring the evidence was not the result of a lack of due diligence (as required by factor 2). This time, however, in apparent consideration of the fact that the DNA evidence did not merely show the lack of a match to Bharadia's DNA but showed the DNA was, in fact, a match to co-defendant Flint's DNA, the trial court found Bharadia met the requirement of showing the evidence is so material that it would probably produce a different

verdict (as required by factor 3). The trial court also found the other factors set forth in *Timberlake* were met.

Bharadia appealed the denial of his extraordinary motion for new trial and, in *Bharadia II*, the Court of Appeals affirmed the trial court's finding that Bharadia had failed to meet the due diligence standard. 326 Ga. App. at 832 (2). Having affirmed the finding that Bharadia did not meet this *Timberlake* factor, the Court of Appeals expressly did not reach the issue of whether the trial court erred in concluding the evidence was not newly discovered; the court also did not address the State's argument that the trial court reached the right result because the new evidence was not, in fact, material. This Court granted appellant's petition for a writ of certiorari to review whether the Court of Appeals properly analyzed the due diligence prong of the standard for determining whether to grant a new trial set forth in *Timberlake* and OCGA § 5-5-41 (c).

2. *Analysis of Bharadia's compliance with the due diligence requirement.*

Application of the six factors set forth in *Timberlake* has long formed the standard by which the courts of this state determine whether to grant a new trial on the basis of newly discovered evidence. *Timberlake*, supra, 246 Ga. at 491

6

(1). One of the requirements is a showing of due diligence in acquiring the newly discovered evidence. Id. In the case of an extraordinary motion for new trial, whether founded on a claim of newly discovered evidence or other grounds, OCGA § 5-5-41 also applies, and sets forth certain requirements and standards for judging whether such a motion should be granted. Pursuant to subsection (a) of the statute, when, as here, a motion for new trial is made after the expiration of the 30-day period allowed for such motions, good reason must be shown by the movant, and found by the trial judge, why the motion was not made within the 30-day period. OCGA § 5-5-41 (a). "Good reason exists only where the moving party exercised due diligence but, due to circumstances beyond [his] control, was unable previously to discover the basis for the claim [he] now asserts." *Ford Motor Co. v. Conley*, 294 Ga. 530, 541 (2) (757 SE2d 20) (2014). Thus, both statutory and case law require a showing of due diligence to authorize the trial court's exercise of discretion to grant an extraordinary motion for new trial on the ground of newly discovered evidence.

The evidence at issue in Bharadia's extraordinary motion for new trial is evidence confirming that the DNA previously found on biological material on the gloves, and tested at the time his first motion for new trial was pending,

7

matches that of the co-defendant. The record reflects that Bharadia asked for DNA testing of his co-defendant at the time of his first motion for new trial, but that request was denied. Bharadia did not challenge that denial on appeal. See *Bharadia I*, supra, 282 Ga. App. at 559-560 (6) (denial of motion for new trial was challenged, inter alia, on the trial court's alleged error in finding Bharadia received effective assistance of counsel with respect to counsel's failure to obtain an expert to test and testify about DNA on certain crime scene evidence other than the gloves). Accordingly, the trial court's initial decision to deny the request for testing the co-defendant's DNA for purposes of comparing it to the DNA found on the gloves can no longer be contested because it remains unreversed and unmodified.

Nevertheless, when the trial court ordered a CODIS database search, and that search identified the co-defendant's DNA as a match to the DNA previously found on the glove, the trial court ordered DNA testing of the co-defendant to confirm the match. A post-trial motion for DNA testing pursuant to OCGA § 5-5-41 (c) (3) (A) requires the person convicted of a felony and desiring such testing to show that "[e]vidence that potentially contains deoxyribonucleic acid (DNA) was obtained in relation to the crime and subsequent indictment, which

8

resulted in his or her conviction." The renewed request Bharadia made for DNA testing of his co-defendant or for performing a CODIS database search did not involve any new testing of the gloves or any other physical evidence that potentially contained DNA obtained in the course of investigating or prosecuting the crime in this case. Accordingly, it was not properly a request for DNA testing made pursuant to OCGA § 5-5-41 (c), nor was it granted pursuant to that statute. Instead, this request was in the nature of post-trial discovery,[4] and neither the order granting the CODIS database search nor the order granting the confirmation testing of the co-defendant's DNA indicates that it was based upon the statute. The order granting DNA confirmation testing states it was granted as a matter of routine policy to confirm a DNA match made from a CODIS search. In granting the writ of certiorari, this Court directed the parties to examine whether the Court of Appeals properly analyzed the due diligence issue under both *Timberlake* and OCGA § 5-5-41 (c). Though we have determined that OCGA § 5-5-41 (c) is not applicable to this case, the

---

[4] See *Hammond v. State*, 282 Ga. App. 478, 479 (638 SE2d 893) (2006) ("A trial court is under no obligation to grant a defendant's post-trial discovery in the hope that it will lead to the discovery of new evidence.").

9

factors set forth in *Timberlake* are still relevant to this appeal.[5]

Even after DNA testing of the co-defendant confirmed a match to the male DNA found on the gloves, the trial court denied the extraordinary motion for new trial. The trial court again examined the six *Timberlake* factors and denied the extraordinary motion for new trial on the ground that Bharadia failed to meet two of them: the first prong of the test because he failed to demonstrate the evidence was newly discovered; and the second prong of the test, because he failed to demonstrate the delay in acquiring the evidence was not the result of a lack of due diligence. In explaining its reason for reaching its conclusion on the due diligence issue, the trial court stated:

> Trial counsel for the Defendant was aware of the existence of the evidence — i.e. the gloves — at the time of trial and aware that the gloves were identified by the victim as having been worn by the attacker. The fact that trial counsel elected not to have the gloves tested for DNA shows a lack of due diligence which resulted in a delay in acquiring this evidence.

---

[5] An amicus brief was filed by the Georgia Association of Defense Lawyers. We reject the argument asserted by amicus curiae, and adopted by appellant as an alternative argument on appeal, that the *Timberlake* factors should not apply to an extraordinary motion for new trial based on DNA test results. Pursuant to OCGA § 5-5-41 (c), even if the trial court orders the requested DNA testing, the issue of whether to grant a new trial is a separate decision. See subsection (c) (12): "The judge shall set forth by written order the rationale for the grant or denial of the motion for new trial filed pursuant to this subsection." Moreover, subsection (c) begins by saying "[s]ubject to the provisions of subsections (a) and (b)," one of which, as discussed above, is showing "good reason," including due diligence, for not filing the new trial motion within 30 days of trial.

This reasoning demonstrates the trial court's inconsistent use of the term "evidence." The trial court order first refers to the gloves as the evidence at issue in the motion, the existence of which was well-known prior to trial; then, addressing the delay in acquiring "this evidence," the order impliedly refers to the DNA test results as the evidence at issue. Even the reference to the DNA test results fails to specify whether it is the original DNA test results which Bharadia showed a lack of due diligence in acquiring, or the results that matched the DNA found on the glove to that of the co-defendant, or both.

The inconsistent use of the term "evidence," however, does not require reversing the order denying the extraordinary motion for new trial. Clearly, the defense knew of the existence of the gloves in this case which potentially contained biological material, namely epithelial skin cells, on or inside the gloves because the victim said the assailant wore gloves. Since the gloves and the biological material on them were available to the defense before trial, they are not newly discovered evidence. The evidence at issue in the initial motion for new trial was the existence of this biological material and the DNA test

11

results that showed the DNA in that biological material was not Bharadia's.[6]

The trial court determined the original DNA test results did not constitute

"newly discovered" evidence since DNA testing of the gloves was available to

Bharadia prior to trial. Nevertheless, when the CODIS database match came

back identifying the co-defendant, the court then ordered confirmation testing

from a new DNA sample taken from the co-defendant. The evidence at issue in

the extraordinary motion for new trial was the CODIS search results and direct

evidence matching the male DNA on the gloves to the co-defendant's DNA.

The trial court determined in this case that the evidence of the DNA match

to Bharadia's co-defendant was material and could have changed the result of

the trial.[7] Nevertheless, the trial court determined that due diligence was not

shown to support the extraordinary motion for new trial. We agree. The gloves

could have been tested for DNA prior to trial, and once the test results showed

the DNA was not a match to Bharadia, he could have requested, prior to trial,

---

[6] The distinction between physical evidence (here, the gloves) and the biological material that may be found in or on such evidence (here, skin cells that contain DNA) is recognized in OCGA § 17-5-56 (requiring law enforcement agencies and prosecutors to maintain physical evidence collected at the time of the crime that contains biological material relating to the identity of the perpetrator of a crime).

[7] The Court of Appeals did not address the State's argument that this determination was erroneous, and we also need not reach that question.

12

the DNA testing of his co-defendant. Instead, Bharadia waited over a year after trial to determine that DNA relevant to the identity of the assailant was on the gloves and that the DNA did not belong to him, and then waited again until almost nine years after trial and almost seven years after his initial motion for new trial proceeding was completed to establish that the DNA was a match to his co-defendant.[8] His defense at trial was that he was not present at the scene of the crimes, yet Bharadia failed to show that circumstances beyond his control prevented him from seeking and obtaining any and all of this testing and resulting evidence prior to trial. Instead, he avoided the risk that pre-trial DNA test results from the gloves would implicate him in the crimes and waited until after his trial and conviction to request these initial tests, at which time he would have been no worse off by a positive test result than he was before taking the risk of requesting a post-trial DNA test.[9]

---

[8] Appellant argues it is the CODIS database match and follow-up testing that forms the basis for the extraordinary motion for new trial, and since the match was made to DNA testing of the co-defendant in conjunction with his conviction on unrelated charges in 2009, appellant argues no evidence exists to show that a match to the co-defendant would have been returned at the time of the trial. Thus, appellant asserts the evidence does not support a finding of lack of due diligence. The point, however, is that appellant could have sought DNA testing of the co-defendant at the time of trial, not merely a CODIS database search.

[9] Bharadia suggests that his lack of due diligence is excused because his trial counsel was ineffective in not seeking testing on the gloves before trial. But in considering due diligence under *Timberlake*, we look to the action and inaction of the defendant, including his counsel and defense

13

The grant of an extraordinary motion for new trial on the ground of newly discovered evidence is reserved for cases in which the facts at issue in the motion were previously impossible to ascertain by the exercise of proper diligence. *Patterson v. State*, 228 Ga. 389, 390 (2) (185 SE2d 762) (1971). Even though Bharadia demonstrated significant post-trial efforts were made to obtain the evidence implicating his co-defendant as the victim's assailant, "diligence before trial will not be inferred from diligence after conviction." *Timberlake*, supra, 246 Ga. at 491 (1). In fact, just as in *Timberlake*, the record reflects no evidence showing that Bharadia was unable to obtain this evidence prior to trial. Compare id. at 492. The only argument made on appeal is that Bharadia was an indigent defendant. But he was represented by counsel both before trial and in his initial motion for new trial proceeding, and still failed to obtain the DNA evidence implicating his co-defendant,[10] and those are the time

team. Ineffective assistance of counsel is a distinct constitutional claim. And even assuming there was no reasonable strategic reason to avoid DNA testing on the gloves before trial, no ineffective assistance claim based on the alleged deficiency in pursuing testing on the gloves was brought by Bharadia and his new counsel in the first motion for new trial (although other claims of ineffectiveness were pursued, including a claim of ineffectiveness in failing to seek DNA testing on other crime scene evidence). Trial counsel was not questioned about why the gloves were not tested, and no habeas petition was filed raising this alleged ineffective assistance claim.

[10] Appellant requested DNA testing of the co-defendant while his initial motion for new trial was pending, but that request was denied and appellant failed to raise that adverse ruling on appeal. In any event, in the appeal now before us, we affirm the trial court's ruling that appellant could have,

periods that establish a lack of due diligence.[11]   The reason for requiring a

defendant to demonstrate he acted with due diligence in acquiring the evidence

he claims is newly discovered "is that litigation must come to an end."

*Llewellyn v. State*, 252 Ga. 426, 429 (2) (314 SE2d 227) (1984).  This reasoning

has been applied to cases involving extraordinary motions for new trial in which

the evidence was arguably capable of being known only after the trial, but which

the appellant delayed in bringing to the trial court's attention in an initial motion

for new trial.  See id.; *Drane v. State*, 291 Ga. 298, 304 (3) (b) (728 SE2d 679)

(2012). It  applies even more strongly to a case such as this, in which there is no

showing why evidence could not have been obtained pre-trial but which the

appellant failed to obtain until after the trial and after the initial motion for new

trial proceedings.  See *Depree v. State*, 246 Ga. 240, 243 (6) (271 SE2d 155)

(1980);  *Turner v. State*, 270 Ga. App. 245, 246 (3) (606 SE2d 296) (2004).

Accordingly, the trial court did not abuse its discretion in ruling that Bharadia

---

but did not, pursue this testing prior to trial, and thus the due diligence requirement of *Timberlake* was not established for that reason.

[11]  Consequently, we reject appellant's argument, in reliance upon *Britten v. State*, 173 Ga. App. 840 (328 SE2d 556) (1985) (physical precedent only), that the circumstances of his indigence and his incarceration since arrest mitigate in favor of a showing that he acted with due diligence in pursuing the evidence at issue in this case.

failed to show the delay in acquiring the pertinent evidence was not owing to his lack of due diligence, a requisite factor to support any motion for new trial on the ground of newly discovered evidence.

Judgment affirmed. All the Justices concur.

Decided June 29, 2015 – Reconsideration denied July 27, 2015.

Certiorari to the Court of Appeals of Georgia – 326 Ga. App. 827.

Aimee R. Maxwell; Steven L. Sparger; Alissa L. Jones, for appellant.

Meg E. Heap, District Attorney, Stacey M. Goad, Nancy Grey R. Smith, Shalena C. Jones, Assistant District Attorneys; Samuel S. Olens, Attorney General, for appellee.

James C. Bonner, Jr., Brandon A. Bullard; Adam M. Hames, amici curiae.