**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 2, 2016**

# In the Court of Appeals of Georgia

A16A0228. WATSON v. THE STATE.                    PE-007C

PETERSON, Judge.

Rodrekus Watson, convicted of robbery as a lesser included offense of armed robbery and theft by receiving stolen property, appeals from the denial of his motion for new trial. He argues that the trial court erred in denying his motion for a directed verdict made after the State's case-in-chief, and urges us to overrule precedent from the Supreme Court of Georgia providing that we may consider all the trial evidence, not just the evidence introduced during the State's case-in-chief, in evaluating this claim. Watson also argues that trial counsel was ineffective for failing to object to or request a limiting instruction with regard to references to his status as a convicted felon. Because we have no authority to overrule or modify a decision of the Supreme Court of Georgia, and the evidence did not demand a verdict of acquittal, we reject

Watson's first claim of error. We also conclude that Watson's claim that counsel was ineffective fails because, given the strong evidence connecting Watson to the robbery, he has failed to establish a reasonable probability that the outcome of his trial would have been different but for his counsel's error. Therefore, we affirm.

On appeal from the denial of a motion for directed verdict, this Court must view the trial evidence in the light most favorable to the jury's verdict. *Helton v. State*, 284 Ga. App. 777, 777-78 (1) (644 SE2d 896) (2007). So viewed, the trial evidence shows that three men participated in a smash-and-grab robbery at a jewelry kiosk in a mall. The assailants used hammers to shatter the glass display cases, took jewelry from the cases, and fled the scene in a stolen car. After the assailants fled, the kiosk employee noticed blood on top of the glass display case that was not there prior to the robbery.

A police investigator took blood swabs from the display case and from broken glass inside the display case, and sent the samples for DNA testing.[1] A GBI DNA analyst compared the DNA profile from the recovered blood samples against a list of known individuals, which did not include Watson, and determined that the DNA was

---

[1] Blood swabs were also taken from the outside The Limited, a retail store in the mall, and the DNA from these swabs was a match for co-defendant Curtis Turner.

not a match for these individuals. The DNA analyst then submitted the DNA profile to the FBI's Combined DNA Index System (CODIS), which collects DNA profiles provided by local laboratories taken from arrestees, convicted offenders, and forensic evidence found at crime scenes, including those from unidentified individuals. *See Bharadia v. State*, 297 Ga. 567, 569 (1) n.3 (774 SE2d 90) (2015).

CODIS issued a "hit" indicating that Watson was a match for the DNA profile obtained from the blood swabs. The CODIS report provided that it was to be used only as an investigative lead. The GBI DNA analyst testified that GBI has a policy requiring local authorities to obtain another DNA sample from the individual identified in the CODIS report and submit it for further testing in order to confirm the CODIS results. No additional DNA samples were taken from Watson until about a week before his May 2012 trial.

The trial court initially held that the DNA test results of those additional samples were inadmissible because Watson did not receive a copy of the results prior to trial. But after Watson called Curtis Turner, a co-defendant, to testify that he did not know Watson and that Watson was not involved in the robbery,[2] the trial court

---

[2] Turner testified that he, co-defendant Kelsey Richardson, and his cousin, Damean Edwards, were the three men involved in the smash-and-grab at the kiosk. Although a fourth co-defendant, Edward Tate, was also charged with and pleaded

3

granted the State's request to present rebuttal evidence. On rebuttal, the State introduced evidence that it had confirmed the CODIS report after testing the additional DNA samples taken from Watson in May 2012, meaning that Watson's DNA profile matched that of the blood recovered from the display case. The jury subsequently found Watson guilty of robbery and, based on the use of the stolen vehicle, theft by receiving stolen property.

1. On appeal, Watson argues that the trial court erred in denying his motion for a directed verdict of acquittal, and argues that our review of his claim should be limited to the evidence introduced during the State's case-in-chief. Watson argues that at the time he made his motion, the only evidence linking him to the crime was the CODIS report that specifically provided that the information contained therein was to be used only as an investigative lead and was required to be confirmed with further investigation. We disagree.

A motion for a directed verdict of acquittal should be granted only when "there is no conflict in the evidence and the evidence with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or 'not guilty.'" OCGA § 17-9-1(a); *Parham v. State*, 320 Ga. App. 676, 677 (2) (739 SE2d 135) (2013). Under

guilty to the armed robbery, he was not present during the offense.

4

*Bethay v. State*, 235 Ga. 371, 374-75 (1) (219 SE2d 743) (1975), a court reviewing the denial of a motion for a directed verdict is not limited to considering only the evidence presented in the case-in-chief, but may consider all the evidence in the case.

Here, the State introduced evidence during its case-in-chief showing that a CODIS report revealed that the DNA found at the crime scene was a match for Watson. On rebuttal, the State presented evidence that the CODIS report was confirmed with subsequent testing. In a protracted argument spanning almost half of his brief, Watson argues that we should overrule or abandon *Bethay*'s express provision that we may consider all of the trial evidence in evaluating the denial of a motion for directed verdict. But we have "no authority to overrule or modify a decision made by the Supreme Court of Georgia, as the decisions of the Supreme Court shall bind all other courts as precedents." *Hudson v. State*, 325 Ga. App. 657, 660 (3) (754 SE2d 626) (2014) (citation and punctuation omitted). Moreover, Watson makes no argument that the trial court erred in allowing the State to present rebuttal evidence confirming the DNA match. Thus, Watson has failed to provide a legal basis precluding our consideration of the DNA evidence.

Reviewing all of the trial evidence, the State established that no blood was on the display case prior to the robbery, blood was left on and inside the display case as

5

a result of the crime, and the blood was a match for Watson's DNA. There was no evidence to explain how Watson's blood could have been left at the crime scene at a time other than when the crime was committed. Thus, the jury would have been authorized to convict Watson of robbery based on his DNA evidence at the crime scene. *See Barstad v. State*, 329 Ga. App. 214, 216-17 (1) (764 SE2d 453) (2014) (the jury was authorized to infer defendant's guilt based on, among other things, the lack of evidence showing how his DNA was left at the crime scene other than the commission of the offenses); *Roberts v. State*, 309 Ga. App. 681, 683 (1) (710 SE2d 878) (2011) (concluding that the unexplained presence of defendant's blood at crime scene authorized the jury to find the defendant guilty of crime). Because there was evidence showing that Watson was connected to the crimes of robbery and theft by receiving, the trial court did not err in denying Watson's motion for directed verdict.

2. Watson next argues that trial counsel was ineffective for failing to object to or request a limiting instruction regarding testimony that CODIS was made up of genetic profiles of convicted felons or to object to testimony that Watson was previously convicted of a felony. We disagree.

In order to prevail on an ineffective assistance of counsel claim, Watson "must show that trial counsel's performance fell below a reasonable standard of conduct and

6

that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." *Scott v. State*, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citing *Strickland v. Washington*, 466 U. S. 668 (104 S.Ct. 2052, 80 LEd2d 674) (1984)). In reviewing a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld unless clearly erroneous, and review a trial court's legal conclusions de novo. *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014).

Here, trial counsel did not object when the GBI DNA analyst testified that CODIS contained DNA profiles of convicted offenders, "missing persons," and forensic evidence collected at crime scenes. In response to trial counsel's questioning, the witness repeated her testimony that CODIS contained DNA profiles of convicted felons. Trial counsel also did not object when the State elicited testimony from the police investigator that the DNA profile of another suspect was in CODIS as a result of that suspect's felony conviction, nor did counsel object when the detective confirmed that Watson was convicted of a felony prior to 2008. This Court has stated that "evidence that a defendant's DNA profile is included in a database compiled by a state or a federal government agency would reflect badly on the defendant's character if the DNA profile or references to the database linked the defendant to

7

criminal activity." *Scales v. State*, 310 Ga. App. 48, 51-52 (2) (a) (ii) (712 SE2d 555) (2011).

Assuming without deciding that trial counsel was deficient in failing to object to or request limiting instructions regarding references to Watson's prior felony conviction, Watson has failed to establish prejudice. In this smash-and-grab robbery, Watson's DNA was found not only on the glass display case of the kiosk, but also on broken glass *inside* the case. The uncontradicted evidence shows that there was no blood on the display case prior the robbery. Given that the undisputed evidence establishes that Watson's blood was left *inside* the broken glass case at the time the crime was committed, there is no reasonable probability that, but for trial counsel's errors, the outcome of the trial would have been different. Therefore, the trial court correctly rejected Watson's claim of ineffective assistance of counsel.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*